## THE BOARD OF COMMISSIONERS OF SMITH COUNTY v. C. C. LABORE, *et al.*

1. PROCEEDING IN ERROR, *Deemed Commenced.* A proceeding in error in the supreme court will be deemed commenced at the date of the summons, where the summons is served within a reasonable time afterward.

2. PROCEEDING, *Begun in Due Time.* A proceeding in error, commenced in the supreme court on the same day of the same month of the next year after an order or judgment sought to be reversed is made or rendered, is commenced within one year, and in proper time.

3. ———— *Computation of Time.* In such cases the first day is to be excluded and the last day included in the computation of the time.

4. PUBLIC ROAD; *Damages; Award to Separate Land-Owners.* Where three quarter-sections of land lying in a body are owned severally by three persons, who, under a written contract between themselves, use the land in common; and each quarter-section is more valuable by being so used than it would be if used separately; and a public road is established across these three quarter-sections, separating the stock water from the pasture land, and thereby rendering the use of the land in a body under the contract less valuable, and thereby lessening the value of each quarter-section: *Held,* That damages for this loss of value to each quarter-section may be awarded to the owners of the land.

### *Error from Smith District Court.*

ON July 11, 1884, the board of county commissioners of Smith county established a public road across the lands of C. C. Labore, Lewis W. Labore, Arthur C. Labore, and others. The commissioners awarded to C. C. Labore $66.67 damages,

to Lewis W. Labore $133.33 damages, and to Arthur C. Labore nothing; and these parties severally appealed to the district court. Afterward, and by consent of all the parties, the appeals were consolidated, and all heard together as one case. This consolidated case was tried before the court and a jury, at the April Term, 1885, and the jury rendered the following verdict and made the following findings, to wit:

"VERDICT.

"We, the jury impaneled and sworn in the above-entitled case, do find from the law and the evidence the issues of this case in favor of the plaintiffs, and that they ought to recover as damages the following amounts, viz.: Damage to the land of C. C. Labore, $80; damage to land of L. W. Labore, 0 dollars; damage to land of A. C. Labore, 22.60 dollars; damage to use of all their land under contract until expiration of same, 410 dollars."

"FINDINGS.

"*Ques. 1:* How much is the actual damage to his (C. C. Labore's) land as a farm for all purposes? *Ans.:* $80.

"Q. 2. What was the actual value of C. C. Labore's farm on or about July 11, 1884, immediately before locating the said road? A. $5,000.

"Q. 3. What was the market value of said land immediately after the location of said road? A. $4,920.

"Q. 4. How many rods of fence is C. C. Labore required to build, if any, by reason of the location of said road? A. 160 rods.

"Q. 5. Give each item of damage to C. C. Labore's farm, separately; name the items and give the amount of each item for which you allow damages. A. For fence, $50; for land, $30.

"Q. 7. If you find for Lewis W. Labore, you will answer the following questions: What is the actual damage to his farm by the location of said road? A. None.

"Q. 8. Give each item of damage to Lewis Labore's farm, separately, and give the amount of each item for which you allow damage. A. None.

"Q. 9. Is the road located a direct and special benefit to his farm? A. Yes.

"Q. 10. If you find for Arthur C. Labore, what is the actual damage to his farm by the location of said road? A. $22.60.

"Q. 11. Give each item of damage to Arthur C. Labore's farm separately, and give the amount of each item for which you allow damage.   A.   Fence, $21; land, $1.60.

"Q. 12. Were the plaintiffs damaged by the location of said road, under and by virtue of a contract?   A.  Yes.

"Q. 13. If you answer question 12 in the affirmative, how much is C. C. Labore's damage?   A.   $136.66⅔.

"Q. 14. How much is Lewis W. Labore's damage, by reason of the contract?   A.   $136.66⅔.

"Q. 15. How much is Arthur C. Labore's damage, by reason of the contract?   A.   $136.66⅔."

Upon this verdict and these findings the court below rendered the following judgment, to wit:

"That plaintiff C. C. Labore have judgment for $80; that A. C. Labore have judgment for $22.60; and that all the plaintiffs jointly have and recover of the defendant $410, and costs of this action herein, taxed at $359.30."

The defendant *County Board* brings the case to this court.

*L. C. Uhl*, county attorney, for plaintiff in error.

*Kelley & Thorp*, for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: The defendants in error, plaintiffs below, move to dismiss the petition in error and case from this court, for the reason that the case was not brought to this court within one year after the judgment of the court below was rendered.   It appears from the record that the judgment of the court was rendered on April 28, 1885.   When the motion for a new trial was overruled, whether before or after the rendering of the judgment, or at the same time, is not shown. The petition in error, the case, and a precipe for a summons, were all filed in this court on April 22, 1886.   The summons was issued on April 28, 1886.   On May 1, 1886, a paper, signed by the attorneys of the defendants in error, plaintiffs below, waiving the issuance of a summons and accepting the service thereof, was filed in this court.   When this paper was signed, is not shown.   On May 6, 1886, the summons was served upon the defendants in error, plaintiffs below; and the

motion to dismiss the case from this court was not filed until October 20, 1887.

We know of no good reason why this proceeding in error should not be deemed to have been commenced in this court on April 22, 1886, when the plaintiff in error filed in this court its case, its petition in error, and its precipe for summons. But even if there should be some reason for considering this proceeding in error as not having been commenced at that time, then we would think that undoubt- 1. Proceeding in error, deemed edly it should be considered as having been com- commenced. menced on April 28, 1886, when the summons was issued. (*Thompson v. Wheeler & Wilson Mfg. Co.*, 29 Kas. 476.) And if the proceeding in error was commenced at that time, then it was commenced within proper time, and within one year after the judgment of the court below was rendered. Under § 722 of the civil code, time is to be computed by excluding the first day and including 2. Proceeding, begun in due the last, except when the last day falls on Sun- time. day, and then Sunday is also to be excluded. Now if we exclude the first day in the present case, to wit, April 28, 1885, which was the day on which the judgment was rendered, then the year within which the case is to be 3. Computation brought to this court would commence on April of time. 29, 1885, and it would not end until the last moment of April 28, 1886; hence, under the civil code, it is clear that this case was brought to this court within proper time.

From the record in this case the following facts appear: C. C. Labore is the father of Lewis W. Labore and Arthur C. Labore. Each owns a quarter-section of land in Smith county, Kansas. These three tracts of land adjoin each other, are used together, and in fact constitute one body or tract of land. It is principally grazing land, and is used by the three Labores jointly for the purpose of raising and pasturing cattle thereon, which cattle they own in common as partners. The water for the cattle is principally, if not entirely, on the land of C. C. Labore. The partnership between the Labores was created by

a written contract, in January, 1883, and was to continue for the period of twelve years. A public road was established across this land in July, 1884, which took a portion of each quarter-section, and separated a large proportion of the grazing land from the water. This separation of the grazing land from the water injured the value of the land as a whole, and if the use of the water may be considered in connection with the use of each quarter-section, then such separation also injured the value of each quarter-section. If, however, the use of the two quarter-sections belonging to Lewis W. Labore and Arthur C. Labore, and on which the water is not situated, are not to be considered in connection with the use of the water which is situated on the land of C. C. Labore, then the separation of the grazing land from the water cannot affect the value of such two quarter-sections. In the court below it was held in substance, if not in terms, that the injury to each quarter-section by reason of the separation of the water from the grazing land was $136.66⅔; and that the injury to the whole of the land, in the aggregate, was $410; and for this amount, together with the other damages to the land, the court below awarded damages in favor of the Labores and against the county; and whether this award for the $410 damages is correct, or not, is the only material or substantial question involved in this case.

We think the decision of the court below is correct. Where land is taken for public purposes, the owner is entitled to full compensation for all the resulting loss sustained by him, whatever the elements of that loss may be; and he is entitled to compensation not only for the loss of the land actually taken, but also for the loss of the value, or the depreciation in the value of that not taken. It is really the loss of the value of his property for which he receives compensation — the difference in value with the road and without it, where he suffers loss; and there may be innumerable elements constituting or contributing to that value. Land is never valued solely because of its inherent qualities, or merely for what is in it, or upon it. Its

4. Land taken for public purpose; compensation to owner.

value depends as well upon many extrinsic circumstances. Vacant and unimproved land near some one of our large cities, which once might have been purchased for less than $5 per acre, might now, in many cases, be sold for more than $1,000 per acre. In such cases it is not anything in the land itself, or upon it, which has brought about this great increase in the value, but the increase has been brought about solely by extraneous circumstances; and yet if the land were taken from the owner for public purposes, he would be entitled to recover from the public the full amount of its enhanced value. Or, if a part only were taken, and a part left, then he would be entitled to recover not only for the part taken but also for the entire depreciation of this enhanced value of the part left. We suppose it will be admitted that any one of the Labores would have a right to an award of damages for all the loss which he might sustain by reason of having his own grazing land separated from his own stock water. But that is not precisely this case. In this case the grazing lands of Lewis W. Labore and Arthur C. Labore were separated from the stock water on the land of C. C. Labore. But still the right of Lewis W. Labore and Arthur C. Labore, under the written contract with C. C. Labore to use the stock water on C. C. Labore's land, made their lands more valuable than they otherwise would be; while the right of C. C. Labore, under the contract to use the land of the other two Labores for pasturing his cattle thereon, made his land more valuable than it otherwise would be. This right made his stock water immensely more valuable to him, because he could use so much more of it at a profit. Now may the Labores be deprived of all these benefits and profits, and the enhanced value of their lands resulting therefrom, without their having any remedy? May not each be awarded damages for the loss of value as to his own land? May not each be awarded damages for the difference in value of his own land with the road and without the road, where he suffers loss, although a portion of this enhanced value may be the result of his having the right to use the lands of others? It is claimed, however, by the plaintiff in error, defendant

below, that this enhanced value is based solely upon a lease and the fact of tenancy, and that tenants or lessees have no right to have damages awarded to them in condemnation proceedings. Now it is not necessary in this case, in order to sustain the judgment of the court below, that any one of the Labores should be awarded anything as a tenant or lessee, or anything for any injury done to the land of either of the others.' Each originally claimed, and we may consider each as still claiming, damages only for injuries done to his own land. But may not tenants or lessees have an award of damages for losses sustained by them by reason of condemnation proceedings? (*Turnpike Road v. Brosi,* 22 Pa. St. 29; *Brown v. Powell,* 25 id. 229; *N. P. Rld. Co. v. Davis,* 26 id. 238; *Dyer v. Wightman,* 66 id. 425; *B. & O. Rld. Co. v. Thompson,* 10 Md. 76; *Gerrard v. O. N. & B. Rld. Co.,* 14 Neb. 270; same case, 20 Am. and Eng. Rld. Cases, 423; *Renwick v. D. & N. W. Rld. Co.,* 49 Iowa, 664; *Kimball v. C. Rld. Co.,* 7 Foster, 448; *Coutant v. Catlin,* 2 Sandf. Ch. 485; *Astor v. Hoyt,* 5 Wend. 605; *Turner v. Williams,* 10 id. 140; *Gillespie v. Thomas,* 15 id. 464; *In re Streets,* 19 id. 678; *Wiggin v. Mayor of N. Y.,* 9 Paige's Ch. 16; *Parks v. Boston,* 32 Mass. 198; *State Lunatic Hosp. v. County of Worcester,* 42 id. 437; *Ashby v. Eastern Rld. Co.,* 46 id. 368; *Edmands v. Boston,* 108 id. 535; *Cobb v. Boston,* 109 id. 438.) The word "owner," as used in the statutes relating to condemnation proceedings, may perhaps be construed to apply to every person having any interest in the property to be taken. Such seems to be the purport of the above-cited cases.

We would think that justice had been done in this case, and that no material error has been committed; and therefore the judgment of the court below will be affirmed.

All the Justices concurring.