No. 26,574.

A. GARIETY, *Appellee,* v. W. J. FLEMING and S. A. ALTMAN, *Appellants.*

SYLLABUS BY THE COURT.

1. FALSE IMPRISONMENT—*Evidence—Admissibility.* In an action for false arrest, the proceedings considered, and *held:* (*a*) It was not error, under the circumstances stated in the opinion, to admit evidence that the plaintiff had a family consisting of a wife and eight children. (*b*) It was not error to admit evidence that plaintiff lost his position through the action of the defendants.

2. SAME—*Instructions.* The instructions considered and held to have fairly covered the matters in issue, and not to have been erroneous.

3. SAME—*Generally.* Various alleged errors considered, and held not to require a reversal.

Appeal from Miami district court; JABEZ O. RANKIN, judge. Opinion filed May 8, 1926. Affirmed.

*E. J. Sheldon, Frank M. Sheridan* and *Bernard L. Sheridan,* all of Paola, for the appellants.

*Alpheus Lane* and *Karl V. Shawver,* both of Paola, for the appellee.

Appeal and Error, 3 C. J. p. 696 n. 61; 4 C. J. p. 705 n. 86. False Imprisonment, 25 C. J. pp. 443 n. 1, 456 n. 14, 547 n. 15, 551 n. 66, 553 n. 74, 558 n. 46, 560 n. 69, 568 n. 86, 571 n. 89.

The opinion of the court was delivered by

HOPKINS, J.: The action was one for damages for false arrest. The parties resided at Paola. Defendant Altman held a chattel mortgage executed by the plaintiff, covering two horses, a wagon, and a set of harness. Altman also loaned the plaintiff another team of horses to keep for their feed. The plaintiff left Paola, taking with him the property mentioned, went first to Olathe, then to Jackson county, Missouri, near Kansas City. On March 5, 1924, the defendants, and one Borovicka, appeared at the place where plaintiff was working and compelled.him to leave his work and return with them to Paola. Altman was a retired farmer, owning forty or fifty head of horses and mules. Fleming was a constable of the city of Paola. The plaintiff recovered judgment for $2,250, and defendants have appealed.

There was evidence that some time after execution of the mortgage the plaintiff had a conversation with Altman, in which he stated to Altman that he would like to go and work on a pipe line that was being constructed through Johnson county to Freeman, Mo.; that Altman said, "You go anywhere you can get work"; that the plaintiff went first to Olathe, then worked at the Bell Memorial Hospital, Thirty-ninth street, Kansas City, Kan., and next went, with the property in question, to his sister's home near Swope Park, and on March 4, 1924, hired to John Weston, yard foreman of the P. P. Lewis Lumber Company; that the defendants and Borovicka drove to where plaintiff was working on March 5. Among other things, the plaintiff testified that Altman said to him, "We will have to take you back"; that the plaintiff said he would lose his job, that he was in bad shape, and that his family needed the money; that Fleming said, "We are going to take you back to Paola with us"; that on the journey back Fleming threw back his coat and showed his gun; that after they arrived at Paola they drove to the home of Sam Shively, county attorney; that Altman and Shively had some conversation while the others sat in the car; that Altman returned to the car, and Fleming said:

" 'What are you going to do?'

"Altman says, 'Sam can't give me a warrant; take him up and throw him in jail.'

"So they came on to the jail, drove down to the jail door. Bill (Fleming) went up and rang the door bell. Jack Barnes, the sheriff appeared in the

door. Lon (Altman) says, 'Now, Gariety, you have never been in jail, you have never been arrested, you know that will be an awful disgrace on your family and a disgrace on your parents for me to throw you in jail here. What can you do about it?'

"I said, 'I can't do nothing.'

"Lon says to Bill, 'Throw him in jail.'

"Bill said, 'We are already in trouble, you had better let that man go home.'

"The sheriff was standing in the little entrance where they take them in. Borovicka and Lon and I were in the car and Bill was out. Lon says, 'I don't want to throw you in jail. If you will go up and bring that stuff back and pay Mr. Fleming $15 for this trip up there and put that back in Paola, *I will let you go home.*'

"And I said, *'All right, I will do that.*' "

The defendants contend that the court erred in admitting evidence that the plaintiff had a wife and eight children. In support of their contention they cite: *Kansas Pacific Rly. Co. v. Pointer,* 9 Kan. 620; *City of Parsons v. Lindsay,* 26 Kan. 426; *City of Kinsley v. Morse,* 40 Kan. 577, 20 Pac. 217; *Railroad Co. v. Eagan,* 64 Kan. 421, 67 Pac. 887; *Union Pac. Rly. Co. v. Hammerlund,* 70 Kan. 888, 79 Pac. 152.

The cited cases were all actions for damages for personal injuries negligently inflicted. They are not applicable here. Bodily injuries to one's person are to be distinguished from injuries arising from false imprisonment where malice is claimed and revenge the motive, and where mental distress, suffering and loss of wages are elements of recovery. Inconvenience, disgrace, worry and humiliation are elements of damage in cases of false arrest. However, it appears that the defendants themselves developed part of the evidence that the plaintiff was a man of family, and are hardly in position to complain.

The defendants contend that the court erred in admitting evidence that the plaintiff lost his position because of being taken from it to Paola. There was evidence that after the plaintiff was taken from his work, Mr. Weston, the foreman to whom he had hired, procured another man to take his place. Loss of time and interruption of business are elements of actual damage for false imprisonment (*Zimmerman v. Knox,* 34 Kan. 245, 8 Pac. 104), and evidence of the loss of plaintiff's position through the acts of the defendants was not improper.

Complaint is made of the instructions, first, that the court erred in using the word "coerced." The instruction in which "coerced" was used, reads:

Gariety v. Fleming.

"The first and principal question for your consideration is whether the plaintiff was unlawfully arrested, coerced, or his liberty restrained by the defendants as alleged in his petition, and the burden is upon the plaintiff to prove this by a preponderance of the evidence."

The argument is made that the word "coerced" could have been understood by the jury as something other and different from the actual allegations in the petition.

The actions of the defendants from the time they approached the plaintiff where he was working until after they released him at the jail were sufficient basis for the use of the word "coerced." Certainly, under all the circumstances, no prejudice could have resulted, nor was the word improper in the sense in which it was used. In another instruction the court told the jury:

"It is sufficient to show that the defendants at any time or place in any manner restrained the plaintiff of his liberty, or detained him in any manner from going where he wished or prevented him from doing what he wished, provided this is done without legal authority."

The defendants argue that this instruction widened the field far beyond the allegations in the plaintiff's petition; that the words, "any time," "any place," "in any manner," "from going where he wished or prevented him from doing what he wished," and with vague language, emphasized that the defendants were without legal authority, unless they had a requisition or warrant or something of that kind.

In our opinion, the instruction, considered in connection with the other instructions, is not subject to the criticism offered. The gist of the action of false arrest or false imprisonment is the illegal detention of the person without lawful process, or it might be the unlawful execution of lawful process.

False arrest or imprisonment is any unlawful physical restraint by one of another's liberty, whether in prison or elsewhere. (*S. H. Kress & Co. v. Roberts*, 129 S. E. 244 [Va.]. See, also, *Comer v. Knowles*, 17 Kan. 436; *Garnier v. Squires*, 62 Kan. 321, 62 Pac. 1005, *post;* Note in 20 L. R. A., n. s., 968; *Schultz v. Enlow*, 205 N. W. 972 [Ia.]; *Bragg v. Hatfield*, 124 Me. 391; *Vernon v. Plumas Lumber Co.*, 234 Pac. 869 [Cal.].)

Complaint is made of instruction No. 5, which reads:

"You are advised that there is evidence that the defendant Fleming was a constable in Miami county, Kansas, and you are advised that as such constable in Miami county, Kansas, said Fleming would have no legal authority to go into the state of Missouri and make an arrest, and if the de-

Gariety v. Fleming.

fendants did go into the state of Missouri and arrest the plaintiff without lawful process from any court of Missouri, then this would constitute an illegal arrest and restraint."

The defendants argue that the conditions of the mortgage prevented the plaintiff from taking the property not only from the county but from the state, and that defendants were justified in attempting to recover it, and that the instruction as given is clearly a misdirection to the jury. In *Garnier v. Squires,* supra, it was said:

"An arrest by an officer of the law without warrant will not constitute false imprisonment if the officer arresting had reasonable grounds to believe that a felony had been committed; but a private person arrests without a warrant at his peril, and it will be false imprisonment unless it can be shown that a felony has actually been committed.

"The law contemplates that an arrest, either by an officer or a private person, with or without a warrant, is a step in a public prosecution, and it must be made with a view of taking the person arrested before a magistrate or judicial tribunal for examination or trial; and if the purpose of the arrest and detention is forcibly to compel the payment of money, and not to accomplish the prosecution and punishment of the prisoner by legal methods, the restraint is unjustifiable and illegal." (Syl.)

In this connection the plaintiff directs attention to the fact that the defendants neither pleaded nor attempted to prove any justification of their actions. Any justification of defendants' actions must necessarily have been submitted to the trial court before being available for review.

Other complaints with respect to the instructions have been given careful consideration, but no error is discerned.

It is contended that the court erred in overruling the motion for a new trial. Among other things it is argued that the verdict was so excessive as to show that it was given under the influence of passion and prejudice. While in some respects the amount appears to be large, we cannot say, under all the facts and circumstances, that it showed passion and prejudice on the part of the jury, or was so large as to shock the conscience of the court.

Various other complaints have been considered, but we find no error which would warrant a reversal.

The judgment is affirmed.