No. 46,835

Don F. Hogue and Fern H. Hogue, his wife, *Appellants*, v. The Kansas Power and Light Company, a corporation, *Appellee*.

(510 P. 2d 1308)

Opinion filed June 9, 1973.

*John R. Hamilton,* of Crane, Martin, Claussen & Hamilton, of Topeka, argued the cause, and *Ward D. Martin,* of the same firm, was with him on the brief for the appellants.

*Edward L. Bailey,* of Cosgrove, Webb & Oman, of Topeka, argued the cause, and *James D. Waugh,* of the same firm, was with him on the brief for the appellee.

The opinion of the court was delivered by

Fontron, J.: This is an appeal by the plaintiff landowners, Don F. Hogue and Fern H. Hogue, his wife, from an award of damages entered in eminent domain proceedings.

In the year 1970, the Kansas Power and Light Company, herein referred to as KPL or defendant, undertook to condemn a permanent right of way across a 410 acre tract of land northwest of

Topeka owned by Mr. Hogue. The easement angled some 2700 feet across the southeast corner of the tract, was 100 feet in width and was to be used in locating and maintaining an electric power line. Encompassed within the boundaries of the 410 acre tract owned by Mr. Hogue was another and much smaller parcel of 65 acres, the title to which had been acquired by Don F. Hogue and Fern H. Hogue, his wife, as joint tenants for estate planning purposes. No part of the KPL right of way was upon or touched the 65 acres jointly owned by Mr. and Mrs. Hogue.

On the date of the taking, which was March 6, 1970, the entire acreage of 475 acres was raw farmland. However, plans were under way by a watershed district for the construction of a lake on the property and Mr. Hogue had agreed to pay additional construction costs of some $42,000 or $43,000 to have the lake increased in size to 32 or 33 acres. The total cost of the lake was computed to be between $92,000 and $93,000.

Evidence introduced at the trial indicated that the best and highest potential use of the property was lakeside residential. Estimates of the damage resulting to Mr. Hogue's 410 acre tract fluctuated from a low of $3000 to a high of $27,000. The jury, in its wisdom, returned a verdict of $4932. This award triggered an appeal by the landowners who considered the amount inadequate.

The trial court limited evidence of severance damages to that which was occasioned to the 410 acres owned by Mr. Hogue, alone, and the court rejected an offer of proof by the landowners with respect to the damage allegedly caused to the 65 acre tract held by Mr. and Mrs. Hogue in joint tenancy. This ruling is alleged to be erroneous and it is the basis of the first point raised in this appeal.

In contending that the trial court erred in excluding evidence of damage occasioned to the tract owned by Hogue and his wife in joint tenancy, the plaintiffs rely primarily on the case of *Comm'rs of Smith Co. v. Labore,* 37 Kan. 480, 15 Pac. 577, while the defendant places its trust in the later case of *McIntyre v. Board of County Comm'rs of Doniphan County,* 168 Kan. 115, 211 P. 2d 59, and the several authorities cited therein. Before beginning an in-depth examination of these two cases we deem it appropriate to point out the general rule relating to the allowance of severance damages to tracts of land held in diverse own-

ership. In 95 A. L. R. 2d, Anno: Eminent Domain—Severance Damages § 2, p. 890, we find the principle to be stated in this way:

"Generally speaking, in order to allow severance damages where a portion of a parcel or parcels of land claimed as a single unit is taken by condemnation, there must be unity of ownership between the part taken and the remaining part. . . ."

See, also, 27 Am. Jur., Eminent Domain, § 320, p. 143.

The plaintiffs contend this general rule was flatly rejected by this court in *Comm'rs of Smith Co. v. Labore*, supra, but we do not consider the case in quite that light. The three quarter sections of land which were involved in *Labore* were owned severally by a father and two of his sons. They were operated together under a twelve-year written contract as a single unit for the raising and pasturing of cattle owned in common by the three men as partners. Smith County condemned a roadway across all three quarter sections, the effect of which was to separate the major part of the grazing land from the common water supply located on only one of the three tracts. All three landowners appealed from the appraisers' awards and their appeals were consolidated for trial in the district court.

In returning its verdict, the jury found that two of the eighties had sustained actual damages as farms by virtue of the road's location, and it awarded actual farm damages to each of those tracts. As to the third tract, the jury found no actual damage had occurred to that, as a farm, but it did find that all three owners were damaged by the location of the road "under and by virtue of their contract", and each of the three was awarded identical damages on that score.

The *Labore* case can readily be distinguished from the case at bar in two significant respects. In the first place, some portion of land was taken from each of the three quarters for use in establishing the roadway; each owner thereby lost a portion of his individual parcel of land through the condemnation proceedings. In the second place, the three tracts were being used together by virtue of a written contract; each owner thus had a contract right in the land of each of the others and it was this contractual right which made their lands more valuable than they would otherwise have been. Damages to this enhanced value were awarded separately to each of the three owners. This was pointed

out by the court in the later case of *McIntyre v. Board of County Comm'rs of Doniphan County,* supra, where the court quoted the following passage taken from the *Labore* opinion:

" 'Now it is not necessary in this case, in order to sustain the judgment of the court below, that any one of the Labores should be awarded anything as a tenant or lessee, or anything for any injury done to the land of either of the others. Each originally claimed, and we may consider each as still claiming, damages only for injuries done to his own land.' " (p. 118.)

We believe the point was settled in favor of the defendant's position by the *McIntyre* decision, even though the factual situation in that case was not the same as it is here. In *McIntyre,* husband and wife owned adjoining 80 acre tracts of land. A right of way for road purposes was taken across a very small corner of the husband's land and entirely across the wife's 80 acres. This taking, in effect, separated the two contiguous eighties which were being farmed as a single unit by the couple's son.

The husband claimed severance damage to his land resulting from the taking of the roadway from his wife's 80 acres. In the opinion disallowing the husband's claim this court cited the general rule to which we have previously referred. The court also pointed with approval to decisions from three of our sister states in which the facts were closely analogous to the facts we have before us. Those cases appear to this court as determinative of the issue we are now discussing.

In *Glendenning v. Stahley,* 173 Ind. 674, 91 N. E. 234, a husband owned an 80 acre tract over which a roadway was laid out and he and his wife owned a contiguous twenty acre tract as tenants by the entirety. The landowners sought to show the value of the smaller jointly owned tract both before and after the roadway was established. The holding of the Indiana court in rejecting the owners' contention is reflected in the following language:

". . . It is settled that in determining the amount of special benefits or damages sustained by any one proprietor, all land belonging to him lying in a contiguous body and used together for a common purpose will be considered as one tract or farm, without regard to governmental subdivisions. *Speck v. Kenoyer,* supra, and cases cited.

"This principle cannot be extended to cover lands owned by different proprietors, although contiguous and used under one management and for a common purpose. Claims for damages in proceedings of this character are personal, and must be asserted in the name of the actual owners of the lands affected. One person may not recover damages sustained by another, and manifestly special damages suffered by one proprietor could not be compensated by benefits accruing to another. . . ." (pp. 683, 684.)

A similar situation prevailed in *Tillman v. Lewisburg & N. R. Co.*, 133 Tenn. 554, 182 S. W. 597, L. R. A. 1916 D 259, where a railway was laid out on land owned by a wife and husband as tenants by the entirety. The Tennessee court held that the wife could not recover for alleged injury to land she owned in her own name, which lay across the road, even though the two tracts were used and operated together as one farm. In its opinion the court said this:

". . . The two tracts are held by different titles vested in different persons. Separate condemnation proceedings would be required to condemn a right of way over them, and separate suits would have to be brought for damages by the distinct owners against an appropriator for injuries done the tracts. . . ." (p. 560.)

The third case cited in *McIntyre* is *Duggan v. State*, 214 Iowa 230, 242 N. W. 98. Two 80 acre tracts leased and used as one farm were involved in that case. One tract was owned by a brother and sister jointly, the other by the sister alone. The question which came up was whether damages for a highway location across the jointly owned tract should include damage done to the farm as a whole— which would include the land owned solely by the sister. The court ruled in the *Duggan* case that damages could be assessed only as to the jointly owned tract crossed by the road and not to the contiguous tract owned by the sister in her own name.

We have been cited to no decision rejecting the general rule under circumstances identical to those here. However, we are not unmindful of occasional cases which might appear at first glance, from the language used, to deviate from the normal rule. A closer examination of the pertinent facts in such cases will disclose what we believe to be significant factual distinction.

Nor are we oblivious of the charge that strict application of the general rule may occasionally result in what seems to be harsh consequences. Nonetheless, we prefer to adhere to the general rule, believing it will avoid many of the perplexities and complications which are foreseeable should we adopt a contrary position. Mr. and Mrs. Hogue may not have realized all the implications of joint tenancy ownership when they planned their estate, we assume to their mutual advantage, but the thread of countervailing factors runs deeply through the stream of human experience, and expected benefits may often be offset, in part at least, by disadvantages.

As their second point, the plaintiffs contend the trial court erred in refusing to strike a portion of the testimony given by Robert Taggart, who was called as an expert witness on behalf of KPL.

The challenged testimony related to the use which a landowner might make of land covered by an easement, and what the obligation of KPL might be to respond in damages for injuries caused to structures or crops placed on the easement by the landowner.

We believe there are three answers to the plaintiffs' complaint. In the first place no objection was made to the testimony at the time it was given, nor did the plaintiffs then submit a motion to strike the testimony. It was only at a conference held later between court and counsel with respect to the court's instructions that counsel for Mr. Hogue said he still believed "that Mr. Taggart's testimony should be stricken in conjunction with instruction 3-A." Treating this observation as a motion to strike, the trial court said it would overrule the objection. K. S. A. 60-404 provides in substance that timely objection must be made to the admission of erroneous evidence before a verdict or judgment may be set aside on that ground. This statute actually codifies previously existing case law. (See cases cited in 1 Hatcher's Kansas Digest [Rev. Ed.] Appeal & Error, § 365.)

In the second place, the testimony was brought out by plaintiffs on cross-examination of Mr. Taggart. Consequently, they are hardly in position to complain. (*O'Banion v. Railway Co.*, 65 Kan. 352, 356, 69 Pac. 353; *Gariety v. Fleming*, 121 Kan. 42, 44, 245 Pac. 1054; *State v. Cantrell*, 201 Kan. 182, 187, 440 P. 2d 580.)

Finally, the trial court informed the jury, in instruction 3-A, as to the rights of a condemnor in entering upon a condemnee's property to make repairs, to replace property, etc., and as to the liability of a condemnor for unreasonable damage done to a condemnee's property by reason thereof. No objection was made to the instruction as it was given nor was any additional instruction requested or clarification asked. We have examined the instruction in conjunction with Mr. Taggart's testimony and believe no prejudicial error is shown.

The plaintiffs direct their third and final challenge against the verdict. They claim the jury was guilty of misconduct in failing to follow the court's instructions, and in arriving at the amount of damages in an illegal manner.

Upon the hearing of the motion for new trial, the plaintiffs brought forth an affidavit executed by Lee Hettick, the foreman of the jury. They also called Mr. Hettick to testify at the hearing, in person. The burden of Hettick's testimony, both oral and written, was to this effect: In figuring the value of Mr. Hogue's 410 acre

tract before the taking the jurors added the estimated value given by each of the five experts who testified with respect to value and divided the total thus obtained by five. The jury then took three per cent of the before-taking value ascertained in this manner as being the difference in value before and after taking. This amount was awarded Mr. Hogue as damages.

It is argued that this procedure resulted in a quotient verdict. We cannot agree with this argument. A quotient verdict results from adding the suggested verdict of each juror and then dividing the total by the number of jurors, it having been agreed by the jurors beforehand that all would be bound by the result. The average computed in the present case was an average of the before-value estimates of expert witnesses, not an average of the verdicts suggested by individual jurors. Moreover, we believe the evidence is clear that there was no prior agreement among the jurors to be bound by the result of any mathematically computed average.

Plaintiffs correctly point out that where only a portion of a tract is taken through eminent domain proceedings the measure of damages is the difference between the value of the entire tract immediately before the taking and the value of the tract remaining immediately thereafter. (K. S. A. 1972 Supp. 26-513.) Each expert witness who testified in this action properly gave a before and after value and each considered the difference between the two as being the amount of damage sustained by the landowner. We assume the trial court correctly instructed the jury on this point—and have been so advised—even though the instruction is not found in the record.

Mr. Hettick testified that in arriving at a verdict all the jurors considered and discussed the testimony of all the witnesses as to values, and otherwise, and that each juror acquiesced in the amount awarded as being his own individual verdict. While the method of computing the damages may have been somewhat unorthodox, we cannot say the jury acted unlawfully or that it was guilty of misconduct. The jury took three percent of the value of Mr. Hogue's land before the taking as being the difference in the value of the tract remaining. We believe that implicit in this calculation is a finding that the value of the tract which remained after the taking was ninety-seven per cent of the value of the tract before the taking.

Even though we have indicated that in our opinion no prejudicial error resulted from the jury's method of computing the damages

due Mr. Hogue, we are concerned about the admission of much, if not all, of Mr. Hettick's testimony. It has long been the rule that a juror may not impeach his own verdict; he may not divulge what considerations influenced him in arriving at his verdict or the mental processes or reasoning he employed in coming to his decision. (K. S. A. 60-441; *State v. Blocker,* 211 Kan. 185, 196, 505 P. 2d 1099; *Brown v. Hardin,* 197 Kan. 517, 523, 419 P. 2d 912.) On oral argument it was stated, without contradiction, that objections were entered both as to Mr. Hettick's affidavit and as to his testimony. In our opinion the objections should have been sustained as to those portions of his testimony which tended to impeach his verdict.

We find no error in the judgment of the court below and it is affirmed.

FROMME, J., dissenting. Time will not permit an extended discussion of my dissatisfaction with the application of the rule in Syllabus ¶ 1 to the facts of this case. The evidence developed at the trial established the entire 475 acres were owned by Don F. Hogue and his wife and were held by them as a single unit. Additional facts, not mentioned in the majority opinion, should be noted.

The legal title to the 65 acre tract had been placed in the names of husband and wife as joint tenants with right of survivorship. However, the 65 acre tract was entirely surrounded, without ingress or egress, by the 410 acre tract held in the name of the husband alone. The entire 475 acres had been used by husband and wife primarily for agricultural purposes, but in 1964 a plan had been developed to use the entire 475 acres for suburban residential development. This plan was adopted six years prior to the taking of the easement by the Kansas Power and Light Company. The Hogues had entered into an agreement with the Wakarusa Watershed District to participate in the cost of constructing a dam which would result in a 32 acre lake on the premises. They agreed to pay $42,000.00 of the total anticipated cost of $92,000.00. There had been residential development in the general area around the 475 acres and the Hogues at the time did not know of the proposed power line easement to be acquired by the condemnor when they committed themselves to their share of the lake project costs.

The lake will enhance the value of the entire balance of the property and is located largely within the 65 acre tract which is encompassed by the 410 acre tract. Any residential development around the lake would of necessity cross the boundaries of the 65

acre tract and extend over into the 410 acre tract regardless of the technicalities of unity of ownership. Under the evidence developed at the trial the entire 475 acre tract was and is a single unit. The verdict of $4,932.00 for the taking of 6.8 acres out of a residential development area appears wholly inadequate.

Our constitution (Art. 12, § 4) and our eminent domain statute (K. S. A. 1972 Supp. 26-513) provide that no right-of-way shall be appropriated to the use of any corporation, until full compensation therefor shall be paid. Private property shall not be taken or damaged for public use without just compensation. If only a part of a tract of land or interest is taken, the compensation and measure of damages are the difference between the value of the entire property or interest immediately before the taking, and the value of that portion of the tract or interest remaining immediately after the taking.

There can be little doubt in this case the 475 acres comprised one entire tract or unit. The tract had been planned for residential purposes several years prior to this taking. In the present day world this court should not permit the general rule regarding unity of ownership to thwart the constitutional and statutory law of this state requiring full compensation be paid for the taking of private property based upon the most advantageous use to which the property is reasonably adaptable. When there is a single unit of land and title is held partially in joint tenancy by husband and wife and partially by the husband alone the reason for requiring strict unity of ownership does not logically apply. The husband in such case owns an interest in the whole unit and damages from a taking will affect the value of the whole unit.

On the basis of the reasoning in the *Labore* case cited by the majority the jury was improperly restricted in its allowance of damages. The reasoning and rule of the Tennessee and Indiana cases cited in the majority opinion should not be adopted in Kansas. The case should be reversed for a new trial with instructions that the 475 acres be considered as an entire tract for the purpose of determining damages.

SCHROEDER, J., joins in the foregoing dissent.