No. 56,724

IN THE MATTER OF THE ACQUISITION OF PROPERTY BY EMINENT DOMAIN

THE CITY OF OTTAWA, KANSAS, a municipal corporation, *Appellant,*
v. FREDERICK JUNIOR HEATHMAN, *et al., Appellees.*

(690 P.2d 1375)

Opinion filed November 30, 1984.

*John L. Richeson,* of Anderson, Byrd & Richeson, of Ottawa, argued the cause and was on the brief for appellant.

*Eugene C. Riling,* of Riling, Norwood, Burkhead & Fairchild, Chartered, of Lawrence, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

LOCKETT, J.: This is an appeal by the condemnor in a condemnation action from an order granting a new trial to the landowner.

The City of Ottawa, Kansas (the City), filed an appeal of an appraiser's award for land in Ottawa owned by Frederick Junior and Mildred L. Heathman (Heathmans), which was condemned for a permanent construction easement. Trial was held and a verdict reached on August 31, 1983. The jury instruction given by the trial court for determining the Heathmans' damages for the City's taking of their land was:

"The measure of compensation for an easement is the difference between the market value of the entire tract immediately before the taking and the market value of the tract burdened with the easement immediately after the taking. [PIK Civ. 2d 11.08.]

"In other words, you should arrive at the total compensation due the land-owner as follows:

"First, you should determine the market value of the entire property immediately before the taking.

"Second, you should determine the market value of the entire property immediately after the taking of the easement and part of the access.

"Third, you should determine the difference between the two amounts by subtracting the second from the first, which difference will be the amount of your award."

The six-member jury returned a verdict of $42,233.00 as damages for the partial taking by the condemnor. The jury found the value of the property before the taking was $120,000.00 and the value after the easement was taken as $77,767.00.

The landowners filed a motion for a new trial on September 6, 1983, claiming among other things that "the jury arbitrarily ignored the proven elements of damages and the Court's instructions." In support of the motion for a new trial, the Heathmans attached an affidavit of one of the jurors. The affidavit stated:

"That this affiant was a member of the jury panel selected to hear and decide the case of City of Ottawa, Kansas v. Heathman, Case No. 82 C 342.

"That after the foreman, Roger Bush, had been selected, there was much confusion by the jury members as to how they were to determine the damages. There were a few figures discussed. There was little discussion by the jury panel regarding the comparable sales used in the trial.

"Many of the jury members expressed doubts as to arriving at before value of the Heathman tract and the after value. Mr. Bush first suggested that they all decide what the damages were first, and then he could handle the problems of the before and after value of the Heathman tract on the verdict form. The jury members agreed that they would each put down on an individual piece of paper what they felt the damages were to the Heathman property. Those individual figures would be added and totalled, divided by six, and those were the damages they would be bound by. This was done and the figure of $42,233.00 was arrived at. Mr. Bush then suggested the figure of $120,000.00 being the before value of the Heathman property. This was the first time this figure had been mentioned and no one disagreed, nor discussed it. Mr. Bush put the $120,000.00 on the verdict form, subtracted the damages of $42,233.00 to arrive at the $77,767.00 after value, and then put the damages of $42,233.00 as had been previously agreed to on the verdict form. The $77,767.00 after value was never discussed by the jury and was merely the result of Mr. Bush's computations in figuring after the damages had been arrived at, with the figure of $120,000.00 suggested by Mr. Bush. This was how the verdict was arrived at."

All six members of the jury were called to testify at a hearing on the motion on October 6, 1983. The court separately ques-

tioned each juror, then allowed the attorneys to ask questions of the jurors. Each juror testified that they wrote on separate slips of paper the amount he or she thought should be awarded the Heathmans in damages. The amounts the jurors had written on the slips of paper were then added together, the total divided by six, and then rounded off to the nearest dollar, resulting in the figure of $42,233.00. Four jurors testified there had been no agreement in advance by the jury to be bound by the final figure. Two jurors thought there had been a prior agreement to be bound by the figure. All jurors agreed without any discussion to use the amount the jury foreman, Roger Bush, suggested of $120,000.00 for the value before the taking. The final figure, the value after the taking, was determined by subtracting $42,233.00 from the $120,000.00 figure.

On October 12, 1983, the district court granted a motion for a new trial because the jury had failed to follow the court's instruction for determining damages. The City's October 21, 1983, motion seeking a reconsideration of the court's order for a new trial was denied on November 2, 1983. A new trial was held in February, 1984, and the jury, after receiving similar instructions from the trial court, found the value of the property before the taking to be $150,000.00, the value after the taking to be $80,000.00, and determined the amount of damages suffered by the Heathmans to be $70,000.00.

The City claims the trial court abused its discretion when it granted the Heathmans a new trial. The granting of a motion for new trial rests in the judicial discretion of the trial court. The order granting or refusing the motion for a new trial will not be reversed by an appellate court unless a clear abuse of discretion is shown. *State v. Goering,* 225 Kan. 755, 759, 594 P.2d 194 (1979). The grounds for granting a new trial are delineated in K.S.A. 60-259, which states in part:

"(a) *Grounds.* A new trial may be granted to all or any of the parties and on all or part of the issues when it appears that the rights of the party are substantially affected:

"*First.* Because of abuse of discretion of the court, misconduct of the jury or party, or accident or surprise which ordinary prudence could not have guarded against, or for any other cause whereby the party was not afforded a reasonable opportunity to present his evidence and be heard on the merits of the case."

To determine if the trial court abused its discretion, we must first

decide whether under the facts of the case a juror's affidavit can be used to impeach the jury verdict.

The district court, in its memorandum opinion granting the landowners' motion for a new trial, found that the verdict was not contrary to the evidence, and that the jury did not reach a quotient verdict. The court did find that the jury failed to follow its instruction as to the method for determining damages and in doing so acted contrary to the law for condemnation cases.

Plaintiffs argue that it is impermissible for the court to consider the mental processes of the jury in determining how the jury arrived at its verdict and that the statutes do not mandate the order the jury must follow to determine land values and damages for a partial taking. The defendants, on the other hand, argue that the jury's failure to follow the court's instruction as to how damages are to be determined was reversible error.

It is a long established and generally accepted doctrine that testimony or affidavits of jurors impeaching their verdict will not be received where it is not evident that the jury had acted in contravention of the court's instructions and of the evidence. This protection is to insure that the mental process of a juror in reaching a verdict or the factors which influenced the mental process cannot be inquired into for the purpose of impeaching a verdict. The right to inquire into the jury's basis for reaching a verdict would open the door to the most severely harmful methods for tampering with jurors and would allow a dissatisfied or corrupted juror to destroy a verdict to which that juror had given his assent under sanction of the juror's oath. Jurors are to be afforded the right to have private, frank and free discussions of the questions under consideration.

However, since the jurors operate as a unit, public policy demands that misconduct insofar as possible be discouraged. Courts, therefore, have allowed inquiry into physical matters and misconduct which come to the attention of other members of the jury panel and may be verified or denied.

The general rule against allowing jurors to impeach their verdict has been modified in some jurisdictions by statute. In Kansas, statutes allow admission of evidence to test a verdict. K.S.A. 60-441 and 60-444(a) set forth the method of testing a jury's verdict.

K.S.A. 60-441 states:

"Upon an inquiry as to the validity of a verdict or an indictment no evidence

shall be received to show the effect of any statement, conduct, event or condition upon the mind of a juror as influencing him or her to assent to or dissent from the verdict or indictment or concerning the mental processes by which it was determined."

K.S.A. 60-444(a) limits when a juror may be questioned as to how a verdict was reached:

"This article shall not be constructed to (a) exempt a juror from testifying as a witness to conditions or occurrences either within or outside of the jury room having a material bearing on the validity of the verdict or the indictment, except as expressly limited by K.S.A. 60-441."

As a general rule, a verdict will be set aside as contrary to law where, under the evidence, the verdict is contrary to the instructions given by the court. 66 C.J.S., New Trial § 68. The trial court instructs the jury as to the law governing the case, and, if the jury fails to comply with the instructions, the verdict will be set aside. 58 Am. Jur. 2d, New Trial § 134.

A number of Kansas cases have held that a new trial may be ordered when it is evident the jury has not followed the court's instructions. In *Timmerman v. Schroeder*, 203 Kan. 397, 454 P.2d 522 (1969), the jury verdict which limited damages to the exact amount of medical expenses without allowing any amount for pain, suffering and permanent injuries was determined contrary to the evidence. The court's instructions on damages included an instruction to allow damages for pain and suffering. This court stated that where a jury verdict manifests a disregard for the plain instructions of the court on the issue of damages, arbitrarily ignores proven elements of damage and indicates passion, prejudice or a compromise on the issues of liability and damages, that verdict should be set aside on motion for a new trial. 203 Kan. at 400.

In *Dicker v. Smith*, 215 Kan. 212, 523 P.2d 371 (1974), the plaintiff sought actual and punitive damages for fraud in the sale of a home. The jury returned a verdict against the defendant sellers for punitive damages only and against the defendant realtor for actual damages only. The verdict was not acceptable because under the instructions actual damages against the sellers had to be assessed before punitive damages could be awarded. It was apparent that the jury either misunderstood the instructions or it disregarded them in an attempt to fashion its own concept of justice. A new trial was granted.

In cases where it is not evident the jury had failed to follow the court's instructions, new trials have been denied. In *Gannaway v. Missouri-Kansas-Texas Rld. Co.*, 2 Kan. App. 2d 81, 575 P.2d 566 (1978), the defendant claimed the court erred in refusing to receive testimony from the jury foreman that the jury did not in fact reduce lost future earnings to present worth in determining the damages. The court found it was not apparent from the facts and circumstances that the verdict resulted from the jury's disregard of the instructions. Only by questioning the jurors could the verdict have been impeached. A new trial was denied. ·

*Hogue v. Kansas Power & Light Co.*, 212 Kan. 339, 510 P.2d 1308 (1973), was an appeal by the plaintiff landowners from an award of damages entered in eminent domain proceedings. Hogue claimed the jury was guilty of misconduct in failing to follow the court's instructions and in arriving at the amount of damages in an illegal manner. In figuring the value of the land before the taking, the jurors added the estimated value given by each of the five experts who testified with respect to value and divided the total thus obtained by five, then took three percent of the before-taking value ascertained to determine the difference in value before and after taking, and awarded that amount as damages. The court found that the jury had not acted unlawfully. It said that a juror may not divulge the mental processes or reasoning he employed in coming to his decision, and the lower court should have sustained objections to portions of the juror's testimony which tended to impeach his verdict.

In *Smith v. Union Pacific Railroad Co.*, 214 Kan. 128, 519 P.2d 1101 (1974), the plaintiff on the motion for new trial submitted affidavits of a juror and investigators containing statements that the court's instructions were not clear and were confusing to some of the jurors. The court held the affidavit of the juror was not admissible for it was an attempt to impeach and overthrow the verdict. *Perry v. Bailey,* 12 Kan. 539 (1874). See also *Milling Co. v. Edwards,* 108 Kan. 616, 620, 197 Pac. 1113 (1921); *Kincaid v. Wade,* 196 Kan. 174, 410 P.2d 333 (1966); *State v. Schroeder,* 201 Kan. 811, 822, 443 P.2d 284 (1968); *Hogue v. Kansas Power & Light Co.,* 212 Kan. 339, Syl. ¶ 3.

The defendant in *Merando v. A. T. & S. F. Rly. Co.*, 232 Kan. 404, 656 P.2d 154 (1982), claimed the trial court erred in refusing to hear evidence of juror misconduct and in failing to order a new

trial for juror misconduct. The claim was based on similar af-
fidavits of two jurors. The court had properly instructed the jury
concerning contributory negligence, using the instruction
usually given in the Federal Employers' Liability Act (45 U.S.C.
§ 51 *et seq.* [1982]) cases. The affidavits of the jurors indicated
that the jury did its calculation in reverse, first determining the
net award the jury wanted the plaintiff to receive, then the
percentage of total negligence attributable to each of the parties,
and finally the total amount of damages. This court concluded
that the trial court did not err in refusing to hear evidence as to
how the verdict was reached, finding there was *no conscious
conspiracy to circumvent the comparative facets of FELA or of
the trial court's instructions.* In *Merando,* the fact that the jury
reversed the order of procedure laid out in the trial court's
instructions went to the mental processes of the jury and was not
alone sufficient to impeach the verdict. K.S.A. 60-441.

Where under all the facts and circumstances it is disclosed that
the jury was confused in making findings and in awarding
damages, or where a jury verdict manifests a disregard for the
plain instructions of the court on the issue of damages, or arbi-
trarily ignores proven elements of damage, or indicates passion,
prejudice or a compromise on the issues of liability and damages,
the verdict should be set aside on motion for a new trial.

In *Irwin v. Thompson,* 27 Kan. 643 (1882), the issue was
whether the plaintiffs and defendants were, to the knowledge of
each other, acting for themselves or as agents for third parties.
The court charged the jury that if plaintiffs were acting as agents,
then the jury should find for defendants. The jury found no
agency, even though the court said the testimony manifestly
demonstrated an agency. The court set aside the verdict.

In *Johnson v. Oil & Gas Co.,* 114 Kan. 519, 220 Pac. 176 (1923),
the trial court ordered a new trial noting that the various verdicts
rendered seemed to show that the jury totally misapprehended
the issues raised, and did not follow the instructions. The *John-
son* court, reviewing prior Kansas decisions, stated:

"In the case of *Ryan v. Tudor,* 31 Kan. 366, 2 Pac. 797, this court reversed a
judgment of the district court based on a verdict returned in disregard of an
instruction.

"In the case of *U. P. Rly. Co. v. Hutchinson,* 40 Kan. 51, 19 Pac. 312, the
syllabus reads:

" 'The instructions of the trial court to the jury are the law of the case, for the

jury to obey and follow. If the instructions of the trial court are wholly disregarded by the jury upon a material question of law, their verdict in defiance thereof ought not to be the foundation for any judgment.'

"In the case of *Railway Co. v. Schroll,* 76 Kan. 572, 92 Pac. 596, an exhibit attached to the petition contained a material statement made by plaintiff. The court instructed the jury to accept the statement as true. The jury disregarded the instruction and returned a verdict for plaintiff, which the district court approved. This court reversed the judgment, and ordered judgment for defendant. The syllabus reads as follows:

" 'Where in such an action the court, without objection, instructed the jury to accept the statements of the exhibit attached to the petition as true, such instruction became the law of the case, and it was the duty of the jury to follow and obey the direction given. A verdict returned in violation of such instruction does not furnish a legal basis for a judgment.' (¶ 2.)" 114 Kan. at 522.

In all of these cases it was evident from the verdict reached that the jury had acted in contravention of the court's instructions and of the evidence. Disregard of the instructions was sufficient cause for the courts to grant a new trial. In the present case, it is not evident from the jury's verdict that the jury failed to follow the court's instruction. In fact, the trial court specifically found that the verdict was not contrary to the evidence, but was within the range of damages contained in the evidence. The court learned of the jury's failure to follow instructions only after the filing of the juror's affidavit and upon questioning the jurors at the hearing on the motion for a new trial. Whether this evidence could be used in determining whether to grant a new trial is a separate issue.

The cases seem to draw an indistinguishable line between when jurors can be questioned to determine whether they followed court instructions and when that testimony of the jurors can be used to impeach their verdict. In *Verren v. City of Pittsburg,* 227 Kan. 259, 607 P.2d 36 (1980), this court discussed the issue at length. In *Verren,* the defendant moved for a new trial because of jury misconduct. It submitted the affidavits of two jurors which stated that the jury had, contrary to the instructions, specifically included in the damages award an amount for attorney fees. This court observed that under K.S.A. 60-441 and 60-444(a) a juror may not impeach his or her verdict on any ground inherent in the verdict itself; a juror may not divulge what considerations personally influenced him or her in arriving at the verdict or what reasoning personally led him or her to the final decision.

The *Verren* court then determined there are certain formalities of conduct which a jury is required to follow. The jury's failure to obey these essential formalities of conduct can invalidate its verdict. Evidence may be offered in such cases to impeach a verdict when the evidence will show actions of the jurors by which they have intentionally disregarded the court's instructions or violated one or more of the essential formalities of proper jury conduct.

Misconduct by the jury, when it occurs, may be uncovered and the truth and veracity of those testifying to such misconduct can be tested. The matters set forth in the affidavits, if proven, must establish a conscious conspiracy by the members of the jury to disregard and circumvent the instructions on the law given by the court. If they do so, the jurors would have violated their oaths as jurors.

Except for *Verren,* 227 Kan. 259, in all the cases where the court determined a new trial was proper because the jury had failed to follow instructions, it was obvious from the verdict that the jury had failed to follow instructions. In *Gannaway, Hogue, Smith* and *Merando,* it was not obvious from the verdict that the jury had failed to follow instructions, and the court said it was improper to look into the jury's mental processes to determine how the verdict was reached. While it was not evident from the *Verren* verdict that the jury had failed to follow instructions, the court found proper circumstances existed to question the mechanics of how the jury reached its decision.

In distinguishing *Verren* from the other cases, the court said the jury "conspired together so as to circumvent the comparative negligence law." 227 Kan. at 263. The conspiracy could only be discovered by questioning the jurors after the trial to determine how they reached their verdict. Under *Verren,* a court may question the jury to determine if there was a conscious conspiracy to circumvent the law which results in substantial prejudice.

Here the jury disregarded the court's instruction to discuss the issues and deliberately used an improper method for determining damages; their verdict resulted in substantial prejudice; therefore, the questioning as to the jury's thought processes was proper. Based on the affidavit by the juror that the jury had failed to discuss the issues and deliberately disregarded the court's

instructions on the method of determining damages, the trial court acted properly when it questioned the jurors.

The statute and the instruction given by the court prescribe the order the jury must follow to determine damages for partial takings and that sequence must be followed. A new trial, however, may not be granted where it is merely alleged that the jury did not formally follow the proper order in determining the before and after values of the taking. There must be evidence, as here, that the jury consciously conspired to undermine the jury process by ignoring the instructions. Otherwise, it must be presumed that the jury has properly determined the before and after values before arriving at damages.

The City claims that even though it was improper for the jury to disregard instructions, the result was harmless error. The verdict resulted in no prejudice to the defendants and, therefore, a new trial should not have been granted.

Harmless error is error which does not prejudice the substantial rights of a party, affords no basis for a reversal of a judgment and must be disregarded. *Kansas Savings & Loan Ass'n v. Rich Eckel Construction Co., Inc.*, 223 Kan. 493, 501-02, 576 P.2d 212 (1978); *Home Ins. Co. v. Atchison, T. & S. F. Rly. Co.*, 189 Kan. 316, 319-20, 369 P.2d 338 (1962); *Manufacturing Co. v. Bridge Co.*, 81 Kan. 616, 623-26, 106 Pac. 1034 (1910); *Lemons v. St. John's Hospital of Salina*, 5 Kan. App. 2d 161, 166, 613 P.2d 957, *rev. denied* 228 Kan. 807 (1980); *Mo. Pac. Rly. Co. v. Bennett's Estate*, 5 Kan. App. 231, Syl. ¶ 1, 47 Pac. 183 (1896), *aff'd* 58 Kan. 499 (1897). After reviewing the facts the trial court determined the conduct of the jury, by deliberately disregarding the court's instructions for determining damages, substantially prejudiced the rights of the Heathmans. The error was not harmless. The trial court properly granted a new trial.

Judgment affirmed.