No. 47,422

MICHAEL HENRY DICKER, *Appellant,* v. BENJAMIN NEAL SMITH and YVONNE SMITH, and EDWIN R. CLARKE, d/b/a ED CLARKE COMPANY REALTORS, *Appellees and Cross-Appellants.*

(523 P. 2d 371)

Opinion filed June 15, 1974.

*Richard V. Foote,* of Blair, Matlack, Rogg, Foote and Scott, P. A., of Wichita, argued the cause and was on the briefs for the appellant and cross-appellee, Michael Henry Dicker.

*Ernest McRae,* of McRae and Early, of Wichita, argued the cause and was on the brief for the appellees and cross-appellants, Benjamin Neal Smith and Yvonne Smith.

*W. Jay Esco,* of Wichita, argued the cause and was on the brief for the appellee and cross-appellant, Edwin R. Clarke, d/b/a Ed Clarke Company Realtors.

The opinion of the court was delivered by

FOTH, C.: This is an action for actual and punitive damages for fraud in the sale of a home in Wichita. The plaintiff, Michael H.

Dicker, alleged that the defendants fraudulently represented the house to be free from termites when he bought it. The defendants Benjamin and Yvonne Smith are the owner-sellers, and the defendant Edwin R. Clarke is the real estate broker who handled the sale.

At the conclusion of plaintiff's case the trial court sustained a motion by the realtor, Clarke, for a directed verdict on the issue of punitive damages as to him. Plaintiff's later efforts to have this issue reinstated were fruitless, and as to Clarke the case was submitted to the jury on the issue of actual damages only. The jury returned a verdict against him for $795, the full amount of actual damages prayed for, representing the cost of treating the house for termites and repairing the damage they had done. Clarke appealed from this judgment, but has abandoned his appeal in this court.

As to the defendant sellers, the Smiths, the case went to the jury on both actual and punitive damages. The jury returned a verdict against them for $2,750 in punitive damages only—as to them no actual damages were awarded. They did not appeal from this judgment. Rather, they filed a motion for relief from the judgment under K. S. A. 60-260 (b) (4) on the theory that it was void because not supported by a judgment for actual damages. The trial court overruled their motion and they have appealed from that order.

The main appeal in this case is by the plaintiff, Dicker. He contends that it was error for the trial court, first, to take away from the jury his claim for punitive damages against Clarke, and second, to accept the verdict against the Smiths for punitive damages only. Although at least nominally the successful party below, he seeks a new trial as to all defendants. Resolution of the issues raised requires a brief examination of the transactions among the parties.

In February, 1971, Dicker was house-hunting in anticipation of his impending marriage. A Clarke employee showed him the Smith house, and when he showed interest conveyed him into the presence of Clarke himself. Dicker explained that he would have to finance the purchase through a no-down-payment Veterans Administration loan, and Clarke volunteered to assist him in obtaining such a loan. One V. A. requirement, Clarke explained, was a certificate showing that the house was free of active termites. A proposed sales contract was drawn by Clarke and executed by Dicker, containing a covenant that the sellers Smith would furnish the necessary termite certificate.

The next day, February 18, 1971, Clarke presented the offer to his clients, the Smiths. They signed, with a slight price modification subsequently assented to by Dicker, and the sale was "on".

As soon as the Smiths signed the contract Clarke arranged to have the house inspected for termites by Hawks Inter-State Exterminators, a pest control firm Clarke frequently employed for such inspections. The inspection was made the same day. The inspector, one Herbert Stepp, found active termites and, he testified, so advised Mrs. Smith. He also called Clarke to advise him of the findings, and forwarded a written report to Clarke.

Clarke, in turn, called the Smiths and informed them of the report. There was some discussion as to whether the Smiths were bound to employ Hawks and it was agreed that the Smiths could call in another firm.

Smith in due course had another inspection made by United Pest Control, on March 14, 1971. He did not tell United of the Hawks inspection or findings. United reported "no termites", and certified their findings to Clarke, who used their certificate to satisfy the Veterans Administration.

Five days later, on March 19, 1971, the sale was closed. Neither Clarke nor the Smiths ever mentioned the first inspection by Hawks Inter-State, or that active termites had been found in the house.

Dicker and his new bride didn't actually move in until late August, following a session of summer school in Michigan. It was the following April that Mrs. Dicker first noticed and cleaned off a mud blob on an exposed ceiling beam. When it reappeared a week later she pointed it out to her husband, who noticed some small insects in the area. After capturing a few specimens Dicker sought a termite inspection.

As luck would have it he called Hawkes Inter-State, who sent out the trusty Mr. Stepp. Stepp remembered the house and, as he told Dicker, he found termites just where he had found them a little more than a year before. Although his proposal to treat the house had been declined by the Smiths, Stepp was surprised at finding termites still there, and that the house had not been treated. Dicker, needless to say, was even more surprised. This suit followed.

We turn first to the claim against Clarke. When the trial court took the issue of punitive damages away from the jury, it commented "fraud is hard to prove" and that as to Clarke it had "heard no testimony of any fraud or misrepresentation." Yet Dicker's

claim against Clarke was based solely on a theory of fraudulent concealment. While all the instructions are not in the record on appeal, it appears the jury was thoroughly instructed on that theory. A specific instruction was given on a broker's duty to inquire so as to avoid misrepresentation. No other basis of liability was asserted against Clarke, and we can perceive no other basis in the record. If, as the trial court apparently believed, there was no evidence of fraud on Clarke's part it would appear that he should have been out of the case entirely. If, on the other hand, there was evidence of fraud then Dicker was entitled to have the jury consider the question of punitive damages. Cf., *Walker v. Fleming Motor Co.*, 195 Kan. 328, 404 P. 2d 929; *McWilliams v. Barnes*, 172 Kan. 701, 242 P. 2d 1063; *Martin v. Hughes*, 156 Kan. 175, 131 P. 2d 682; *Cady v. Case*, 45 Kan. 733, 26 Pac. 448.

We think there was evidence from which the jury could have inferred a fraudulent intent on Clarke's part. Dicker testified to a conversation with Clarke within a week of the closing date of March 19, 1971. At that time the first Hawks inspection had long since been made, Clarke had been advised of the presence of termites both orally and in writing, and he had discussed the problem of treatment with Smith. But when Dicker asked for a progress report, "Mr. Clarke advised him that everything was going through okay and the only thing pending was the termite inspection on the house and that would be taken care of."

The jury could easily infer from this response, together with Clarke's later silence at the closing, a deliberate intent on Clarke's part to conceal the existence and contents of the Hawks report. He didn't speak of a termite *treatment*, but of a termite *inspection* as the only cause of delay. While Clarke explained his failure to disclose by claiming to rely on the Smiths to have the house treated, he admitted that they never told him they had done so. His motives and intent presented a jury question.

As to the Smiths, the claim was of affirmative fraud as well as fraudulent concealment. Dicker and Smith, while not social friends, were colleagues in the fine arts department of Wichita State University. On one occasion between the contract signing and closing they had a chance encounter on campus. At that time, according to Dicker, Smith assured him that "the deal was real good," that the termite inspection was complete and that Smith had discouraged the inspector from drilling unnecessary holes in the concrete porches

because "everything in the house was in great shape," that "the wood was beautiful," and "there wasn't a termite anywhere near the place."

Both Dicker and the Smiths agree that the judgment against the Smiths for punitive damages only is improper. The difference is that the Smiths claim the judgment is void, while Dicker says it is merely erroneous.

The Smiths cite no cases which hold such a judgment is void, and we are aware of none. The cases they do cite stand for the well accepted proposition that "before exemplary or punitive damages may be awarded there must be actual damages and a right of recovery therefor established." (*Stoner v. Wilson,* 140 Kan. 383, 394, 36 P. 2d 999. See also, *McDonald v. Bauman,* 199 Kan. 628, 433 P. 2d 437; *Watkins v. Layton,* 182 Kan. 702, 324 P. 2d 130; *Schumock v. Meerian,* 175 Kan. 8, 259 P. 2d 173.) In overruling their motion to vacate the trial court found:

"3. That the verdict should stand for the reason that the jury found actual damages against one defendant and punitive damages against the other defendant, and the fact that it was different defendants is not the issue and the Court is allowing the verdict to stand."

We think the trial court was correct insofar as it thus found that the judgment was not void. The rationale of the rule requiring actual damages before punitive damages may be awarded is that we do not punish conduct, no matter how malicious or reprehensible, which in fact causes no injury. That rationale has no application here. The jury, by its verdict, found the Smiths guilty of fraud. It also, by its verdict against Clarke, found that Dicker had been actually damaged. Just why it returned the verdicts it did is a matter of conjecture—perhaps it wished to ensure that each of the guilty parties paid a share of the judgment, and with punitive damages ruled out as to Clarke this was its way of making an apportionment. Cf. *Hubbard v. Havlik,* 213 Kan. 594, 518 P. 2d 352. In any event, the award of punitive damages was bottomed on a finding and award of actual damages. No jurisdictional defects are claimed, and the judgment was clearly not void.

The question remains whether the trial court should have accepted the verdicts as they were returned or whether, as Dicker urges, it should have granted a new trial. The jury implicitly found both Clarke and the Smiths guilty of fraudulent misrepresentations, and it found that Dicker suffered actual damages. It could not consistently make such findings and still fail to return a

verdict for actual damages against the Smiths. It is apparent that the jury either misunderstood the instructions, or it disregarded them in an attempt to fashion its own concept of justice. As to the former situation we have said:

"Where under all of the facts and circumstances presented by the record in a case it is disclosed that the jury was confused in making findings and in awarding damages a new trial will be ordered." (*Hubbard v. Havlik*, supra, Syl. ¶ 5.)

As to the latter we have said:

"A jury verdict which manifests a disregard for the plain instructions of the court on the issue of damages, which arbitrarily ignores proven elements of damage and which indicates passion, prejudice or a compromise on the issues of liability and damages should be set aside on motion for new trial." (*Timmerman v. Schroeder*, 203 Kan. 397, 454 P. 2d 522, Syl. ¶ 2.)

In either event the proper remedy is a new trial, which is what the plaintiff Dicker sought below and is seeking here.

Accordingly the judgment is reversed as to all defendants and the case is remanded for a new trial on all issues in accordance with the views expressed herein.

APPPROVED BY THE COURT.