(675 P.2d 384)
No. 55,420

CAPITOL FEDERAL SAVINGS & LOAN ASSOCIATION, a corporation, *Plaintiff*, v. LOREN H. HOHMAN, SR., BETTY LOU HOHMAN, *et al.*, *Defendants*, and DONALD GABLER and LEAH F. GABLER, *Cross-Petitioners/Appellees*, v. LOREN H. HOHMAN, SR., and BETTY LOU HOHMAN, *Appellants*.

Opinion filed January 26, 1984.

*Thomas W. Regan*, of Topeka, for the appellants Loren H. Hohman, Sr. and Betty Lou Hohman.

*Ralph E. Skoog*, of Ralph E. Skoog, P.A., of Topeka, for the appellees Donald Gabler and Leah F. Gabler.

Before FOTH, C.J.; TERRY L. BULLOCK, District Judge, Assigned; and FREDERICK WOLESLAGEL, District Judge, Retired, Assigned.

FOTH, C.J.: The issue in this case is whether punitive damages may be awarded to the victim of a willful breach of trust where the injury suffered is fully remedied by an equitable decree so that no monetary award of actual damages is made. We hold that they may.

This case started as a mortgage foreclosure action brought by Capitol Federal Savings and Loan Association. At trial the right to foreclose was not in dispute. The controversy centered on the dealings between the mortgagor, Loren Hohman, a Topeka attorney and real estate broker and developer, and Donald Gabler, a business associate and client of Hohman's and the occupant of the property. The facts as found by the trial court are not disputed on appeal and need only be summarized.

Loren Hohman sold a residential lot to Mr. and Mrs. Gabler in 1976. Because the Gablers were involved in a federal income tax controversy, Hohman, as their attorney, advised them that he should retain title to the property and would deliver a deed to the Gablers at an appropriate time. The Gablers took Hohman's advice, and Hohman retained record title to the property.

In 1977 the Gablers moved into the house they built on the lot.

Over the ensuing years, the Gablers made payments on Capitol Federal's first mortgage, executed by the Hohmans, and also made substantial improvements to the house. In February, 1982, the Hohmans gave a $35,000 second mortgage on the property to Hill and Company to secure a preexisting debt.

By December, 1981, the Gablers had fallen behind in their payments to Capitol Federal and in March, 1982, Capitol Federal filed this foreclosure action. Among the defendants were Hohman and his wife as record title holders; the Gablers as occupants; and Hill and Company as holders of the second mortgage. The Gablers cross-claimed against the Hohmans, alleging breach of fiduciary duty and praying for actual damages to the extent of any interest of third parties above the mortgage to Capitol Federal and for punitive damages.

In addition to decreeing foreclosure, the trial court found that a constructive trust existed, with Hohman in a fiduciary relationship to the Gablers by reason of Hohman's agreement to transfer the deed, and that Hohman had an attorney-client relationship with the Gablers. It found that equitable title to the property, and hence the equity of redemption, belonged to the Gablers. It also found that the second mortgage to Hill and Company was given in breach of trust and without consideration and therefore decreed it void. On appeal no issue is raised as to any of these aspects of the judgment.

However, the trial court also found that Hohman's breach of his fiduciary relationship with the Gablers constituted an independent tort which would support the award of punitive damages and fixed those damages at $15,000. It is from this aspect of the judgment that the Hohmans appeal.

The Hohmans concede that a breach of fiduciary duty may give rise to liability for punitive damages, but argue that since no actual damages were awarded to the Gablers, it was error to assess punitive damages. They cite the well-established rule that no punitive damages may be awarded in the absence of actual damages. See, *e.g., Traylor v. Wachter*, 227 Kan. 221, Syl. ¶ 4, 607 P.2d 1094 (1980), and cases cited.

We find no Kansas cases which we regard as directly in point. The many cases cited by the Hohmans for the rule of "no actual damages—no punitive damages" all involve suits in which the plaintiff only sought damages. None involved an injured party

who sought and was granted an equitable remedy for a demonstrated injury, but was denied punitive damages because no actual damages were awarded.

Neither side briefs the question of whether punitive damages may be predicated on equitable relief alone. Our independent research reveals a split of authority elsewhere. See annotation, 48 A.L.R.2d 947, and Later Case Service. The cases denying punitive damages where only equitable relief is granted are, by and large, of ancient vintage. As observed by the Texas Supreme Court:

"The jurisdictions denying exemplary damages do so on the basis of one or more of the theories that a court of equity does not have such power; that the awarding of exemplary damages is incompatible with the principles and practice of equity; and that a litigant waives all claims to exemplary damages by seeking equitable relief. The trend of our decisions has been otherwise." *International Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 583 (Tex. 1963).

That case is recognized as establishing the Texas rule that "exemplary damages can be awarded in connection with equitable relief which is awarded against a willful, malicious or fraudulent wrongdoer." *National Bank of Commerce v. May*, 583 S.W.2d 685, 691 (Tex. Civ. App. 1979).

The modern trend may be illustrated by a few examples. Twenty years ago New York's highest court held that exemplary damages were properly awarded as incidental to an injunction, in *I.H.P. Corp. v. 210 Cent. Park S. Corp.*, 12 N.Y.2d 329, 239 N.Y.S.2d 547, 189 N.E.2d 812 (1963). The court there based its decision on that state's abolition of the distinction between suits at law and equity (except for right-to-jury questions) and the merger of both legal and equitable functions in one court system. That, of course, is the situation in Kansas.

Arizona followed New York's lead in *Starkovich v. Noye*, 111 Ariz. 347, 529 P.2d 698 (1974). Noting that Arizona had likewise abolished the distinction between law and equity, the court found that an equitable decree reforming a joint venture agreement on the grounds of fraud was a sufficient basis for an award of punitive damages. It distinguished that case from earlier cases where punitive damages had been disallowed because no actual damages were awarded. In the earlier cases plaintiffs had been denied *any* remedy on their asserted claims for relief.

Arizona backtracked a bit in *Hubbard v. Superior Court of Maricopa County*, 111 Ariz. 585, 535 P.2d 1302 (1975), where it

held that a suit for rescission for fraud was an election of remedies precluding punitive damages. However, in *Berry v. McLeod,* 124 Ariz. 346, 604 P.2d 610 (1979), it found that punitive damages could be recovered in an action for rescission where the plaintiff also secured the cancellation of other claims of the defendant and a third party. It relied on *Starkovich* and characterized its holding:

"We held that the compensatory damage requirement necessary to support an award of punitive damages is satisfied by either pecuniary loss or '*the alteration of one's position to his prejudice.*'" 124 Ariz. at 348.

Our own Supreme Court came close to resolving the issue in *Nordstrom v. Miller,* 227 Kan. 59, 605 P.2d 545 (1980). That was an action by a buyer to rescind a real estate sale and for punitive damages for fraud. The trial court granted rescission but denied punitive damages as a *matter of discretion,* finding some balancing of the parties' equities because plaintiffs had been in possession of the farm for two years and had had the benefit of the crops. The Supreme Court affirmed without discussion of the "no actual damages," the "law vs. equity," or the "election of remedies" problems, saying merely that "this is a case where punitive damages could legally be awarded because of the independent tort of fraud." 227 Kan. at 70. Because no punitive damages were awarded there the statement is *obiter dictum,* but we read it as some indication of our Supreme Court's thinking.

*Nordstrom* also recognized the oft-stated principle that punitive damages are not intended to compensate the injured party but to punish the offender and to deter others. 227 Kan. 59, Syl. ¶ 12. Hence we find courts using terms "punitive" damages and "exemplary" damages interchangeably. In *Dicker v. Smith,* 215 Kan. 212, 216, 523 P.2d 371 (1974), the court observed that the rationale for requiring actual damages before awarding punitive damages is that the law does not "punish conduct, no matter how malicious or reprehensible, which in fact causes no injury."

Applying those principles to the facts of this case we find, first, that the Gablers were in fact injured by Hohman's breach of trust. Title to the Gablers' house was retained by the Hohmans despite demands for conveyance and, more importantly, the Hohmans encumbered the Gablers' property by the second mortgage of $35,000. As it turned out, the trial court was able to invalidate the second mortgage because the second mortgagee

gave no new consideration, and it was also able to give the Gablers title as against the Hohmans and ownership of the equity of redemption. They were thus made whole without the necessity of money damages.

However, that does not mean the Gablers sustained no injury. They were required to establish both their title and the invalidity of the second mortgage through litigation. As the trial court noted, in fixing the amount of punitive damages the facts that may be considered are "the amount of actual damages incurred, defendant's financial condition and the probable litigation expenses including attorney fees." *Ayers v. Christiansen,* 222 Kan. 225, 229, 564 P.2d 458 (1977).

Had the invalidity of the second mortgage not been established the Gablers would have been entitled to its value, $35,000, as the actual damages prayed for in their cross-petition. In that situation the Hohmans' liability for punitive damages would be unquestioned. We see no reason why they should escape that liability, or why the deterrent effect of a punitive damage award should be lost, simply because the court was able to give the Gablers equitable relief which was the substantial equivalent of the actual damages they sought.

Affirmed.