NOT DESIGNATED FOR PUBLICATION

No. 119,154

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

TIMOTHY JOSEPH LAMAR,
*Appellee*,

v.

MICHELLE KEEFER LAMAR n/k/a
MICHELLE CHRISTMAN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; DAVID W. HAUBER, judge. Opinion filed February 15, 2019.
Affirmed.

*Mark Jones*, of Hazelton & Laner, LLP, of Kansas City, Missouri, for appellant.

*Eldon J. Shields*, of Gates Shields Ferguson Swall Hammond, P.A., of Overland Park, for
appellee.

Before STANDRIDGE, P.J., PIERRON and GREEN, JJ.

PER CURIAM: During the pendency of their divorce and after their divorce was
final, Michelle Keefer Lamar, now Michelle Christman, took $23,138.63 from Timothy
Joseph Lamar's business and personal bank accounts without authorization. Michelle then
failed to comply with the repayment plan and Timothy petitioned the district court for the
balance. The court granted Timothy's petition plus prejudgment interest and punitive
damages. Michelle appeals.

1

The district court described this case as a "postdivorce case gone bad." In August 2010, Timothy and Michelle filed for divorce. Their divorce was final in March 2011. Upon separation, Michelle remained in the family home with the daughter.

In October or November 2013, Timothy discovered Michelle had gained access to his personal and business checking accounts and used them to pay a variety of her household bills. Michelle admitted that she signed Timothy's name on two checks totaling $1,300, during the pendency of their divorce and began paying her bills from Timothy's business account in April 2011 and from his personal account in July 2012. After Timothy confronted her about the theft, Michelle completed an accounting of the money taken. She determined she had taken $13,326.35 from Timothy's accounts. However, she could not access all of the AT&T bills so she estimated she had paid $4,000 to AT&T from his accounts, bringing the total to approximately $17,000.

Michelle initially set up a repayment plan in which she would pay Timothy $20,050.75 over 25 payments from January 2014 through January 2016. The payment plan included a 13% interest rate. However, her current husband, Mike Christman, met with Timothy and agreed the interest rate was excessive. Mike proposed a repayment schedule. The schedule showed a beginning balance of $17,000, payments of $3,427.05, and a balance of $13,564. The Christmans proposed 23 bi-weekly payments of $350 plus payment of Michelle's bonus check for $5,514 and an unknown amount for the last payment. At that point, Timothy had not conducted his own accounting of debts owed and contended he had discussed interest with the Christmans but the three had never agreed on an amount. Timothy also claimed that the three had never discussed the total amount due; they only discussed the repayment schedule.

The Christmans began the bi-weekly payments in April 2015. They claimed to have made nine payments, for a total of $3,150. Michelle stopped payments in August 2015. Timothy testified that when Michelle stopped making payments she provided him

2

with a projection of upcoming costs for their daughter and requested a firm commitment that he would pay those expenses in addition to his child support obligations. Mike testified they had asked Timothy to pay for day-to-day expenses for his daughter in addition to child support.

The Christmans also claimed they stopped making payments when Timothy refused to reimburse them for his share of his daughter's medical bills, a total of $4,598. Michelle asked Timothy to subtract the amount he owed in medical bills from the amount she owed him. Michelle claimed Timothy paid two bills and refused to pay more until she paid what she owed him. However, Timothy insisted he paid all of the medical bills she provided him.

On July 28, 2016, Timothy filed a petition alleging that Michelle had paid $17,000 of her personal bills with his credit card, and such taking constituted conversion of his property. He provided she had paid him approximately $7,000 and requested a judgment for the $10,000 balance plus expenses and court costs and other such relief the court deemed just and equitable. Timothy had still not conducted his own accounting of the funds taken. On August 9, 2016, Timothy filed an amended petition alleging Michelle had taken $19,500 and requested judgment for the balance of $12,500. In her answer, Michelle admitted to the allegations in the amended petition, but not to the amount taken, and asserted the defenses of estoppel and offset.

On January 5, 2017, the district court heard Timothy's motion to compel responses to interrogatories and request for production of documents. The court found Timothy submitted first interrogatories and a first request for production of documents to Michelle on September 28, 2016, but she failed to respond. She failed to respond even after he sent her a golden rule letter. She delivered some responses to interrogatories on January 4, 2017, but they were not verified and she sent "essentially no documents." The court ordered Michelle to produce all responsive documents and verified answers within 10

days. The court warned that failure to do so would result in the court prohibiting Michelle from offering any such responses or documents as defenses at trial. The court awarded Timothy $250 for attorney fees for preparation of the golden rule letter and motion to compel.

On January 30, 2017, Timothy moved for punitive damages. He claimed Michelle had committed theft or deprivation of property by taking control of and spending money from his business and personal accounts for her benefit. He asserted that her actions were willful conduct, wanton conduct, fraud, or malice and so he was entitled to punitive damages.

In the pretrial order, the district court determined Timothy's claim was for theft or conversion of $19,281.95. On the other hand, Michelle claimed she was entitled to $7,000 credit for payments made and $4,598.41 as an offset for unpaid uninsured medical benefits for their daughter. She further claimed she was entitled to an offset for unpaid support during the pendency of the divorce in that she used some of the money to pay for utilities before the divorce was final and alleged that some of the money taken after the divorce was a result of Timothy's untimely child support payments. Trial was set for April 4, 2017.

Two weeks before trial, Michelle filed a motion for leave to amend her pleading under K.S.A. 2017 Supp. 60-215(a)(2) to permit her to raise a statute of limitations defense. The district court heard the motion on April 26, 2017. Michelle argued the two-year statute of limitations had run from the time Timothy discovered her theft to the filing of the petition. Although she contested Timothy's ability to proceed with the conversion claim, she conceded he should be granted leave to amend his pleadings to the alternate cause of action for breach of oral contract, her agreement to pay $17,000, for which the statute of limitations had not run.

4

The district court initially agreed to grant leave until Timothy argued against it by providing a timeline of the thefts and procedural history of the case. He argued although the two forged checks for a sum of $1,300 occurred before the divorce was finalized, the money was not disclosed in the settlement agreement and so was properly considered in the conversion case. This amount was not included in the $17,000 estimation. He noted that in her answer, Michelle only asserted the affirmative defenses of estoppel and offset. She waived the affirmative defense of statute of limitations by failing to assert it. He pointed out that Michelle failed to respond to discovery requests, failed to respond after the golden rule letter, and failed to respond when he moved to compel. Upon negotiations with Michelle, Timothy drafted an order to compel that specifically stated failure to respond to discovery within 10 days of the order would prevent her from offering evidence of affirmative defenses. Michelle agreed to the order. She then failed to respond to discovery requests. Timothy asserted that he had spent $6,000 in discovery and motions and had received virtually no response from Michelle. He claimed that granting leave to amend would eliminate his ability to receive punitive damages and force him to change his pleadings, accumulating further litigation fees. Ultimately, he would spend approximately $15,000 to collect a $19,000 debt.

The district court stated: "It doesn't seem right that you should not identify any facts or affirmative defenses, kind of blow that off, and then expect to pull the proverbial rabbit out of the hat long after discovery and the pretrial is closed." Michelle defended her actions by explaining that she had not realized the statute of limitations had run until she and Timothy attended court-ordered mediation. She argued the court could freely grant leave when justice required. The court denied her motion. The court stated: "We're on the eve of trial . . . and there's been an affirmative defense interrogatory served that seeks the fact in which any affirmative defense exists and none is provided. I don't think justice requires leave in that instance." The court ordered Timothy to journalize the denial under Kansas Supreme Court Rule 170 (2019 Kan. S. Ct. R. 222).

5

At trial, Timothy also presented a handwritten accounting of all the money Michelle had transferred from his business checking account from April 20, 2011, through October 22, 2013, along with the corresponding monthly bank statements showing the electronic transfers. He testified she had electronically transferred $19,212.53 from his business account. Timothy also provided copies of the checks for $1,000 and $300 that Michelle admitted she had written to herself and signed Timothy's name without his consent. He then provided a handwritten accounting and corresponding bank statements showing electronic transfers from his personal checking account that occurred without his consent from July 5, 2012, through October 15, 2013. The total amount transferred from his personal bank account was $2,626.10. Timothy testified Michelle had taken a total of $23,138.63 without his permission.

Timothy asked the district court to grant him the balance of the original amount taken plus interest, less the payments received, which he calculated as $25,078.81. He testified he had taken Michelle's word as to the amount taken and had not conducted an independent review of the amounts until after he had filed the petition. Timothy denied entering into a contract to accept only $17,000 from the Christmans, and he stated that the ledger was only their accounting of the debt, not an agreed-upon balance. He estimated Michelle had paid around $7,000 of the original debt. His interest calculation shows Michelle paid $6,127.05.

Michelle admitted that what she had done was wrong, but she justified her actions as being done out of necessity. She blamed her use of Timothy's accounts on his inconsistent child support payments. From September 2011 until May 2013, Timothy sporadically paid child support. In May 2013, Timothy was $3,900 behind in child support payments before he paid the debt in full. She also contended the original debt was $17,000 and she had already paid $7,000. The ledger the Christmans created showed $6,577.05 paid toward her debt. Michelle claimed she stopped reimbursing Timothy because he owed her $4,598 for their daughter's medical bills.

6

Michelle did not dispute any withdrawals listed in Timothy's handwritten ledger of withdrawals from his business account. When Timothy noted $19,000 had been taken from his business account, she responded, "[T]hat looks like [Timothy's] accounting." When Timothy noted it looked like $2,626 was an accurate accounting of the amount taken from his personal account, she stated, "That's what it looks like."

The district court found by clear and convincing evidence that Michelle had committed conversion and/or fraud, although the court noted it was not viewing this case as a fraud case. The court found she wrongfully took $19,281.95. The court stated it had to award Timothy the amount requested because Michelle had failed to provide any credible evidence of an agreement for a lesser amount. The court was uncertain about whether prejudgment interest under K.S.A. 16-201 applied to tort claims. It noted Michelle stumbled on the stand about the issue of interest and, although the court agreed that Timothy would not have received interest on the amounts taken had they remained in the bank, it explained the interest statute stemmed from the loss of use of his money. The court encouraged the parties to "sit down and bury the hatchet" and resolve the remaining issues. The court instructed the parties to contact it to schedule a hearing if they could not reach an agreement.

The district court heard the motion for punitive damages on September 27, 2017. Timothy provided the bill for attorney fees through trial. He asked the court to award him $13,202.72 in punitive damages to cover all attorney fees incurred for litigation of this case. Timothy asked for an additional $10,000, stating it was "for what I've had to go through to try to collect this money four years now. It's been four year's worth of trying to get it resolved; two years of your time with me."

Michelle provided her 2010-2013 individual tax returns and her W-2's for 2014 and 2015. Her adjusted gross income was approximately $33,000 in 2010, $32,000 in

7

2011, $32,000 in 2012, and $69,000 in 2013. Her wages in 2014 were approximately $90,000 and $107,000 in 2015. She argued that she only agreed to pay $17,000 and with the $19,000 judgment plus the $7,000 she had already paid, Timothy was to receive $26,000 total. She noted that she could not argue against attorney fees but believed damages beyond that would just be piling on. She did not contest the attorney's bill but reminded the court that it had discretion in awarding punitive damages and encouraged the court to consider her low income at the time of the thefts and the needs of her daughter. Michelle also asserted the court should be more lenient because of her willingness to repay the money and the fact that she did repay a portion.

Timothy argued she had stolen the money and although she had made some effort to repay her debt, the amount taken was closer to $26,000 than the $17,000 she claimed. He initially relied on her honesty about the amount taken and had given her credit for all payments received. He pointed out that he had to file the lawsuit to recover the money even though Michelle could have paid him the full amount from the proceeds when she sold the house. However, she paid him only the amount required by the divorce decree, opting against paying her debt to him. Timothy also noted that Michelle failed to respond to interrogatories, the motion to compel, motion for punitive damages, witness lists, and only filed a motion to amend the pleadings, which the court denied because of its lateness and the failure to respond to all previous filings. He contended that he sought the full amount of attorney fees because Michelle caused him to incur them. Timothy noted that he requested the additional amount as a penalty for unwillingness to acknowledge that she stole the money and repay the entire amount.

The district court analyzed the request for punitive damages under K.S.A. 60-3702(b). In its analysis of subsection (b)(7), the court stated that the theft occurred during a time of financial pressure but recognized that did not excuse Michelle's conduct. It noted the significant deterrent effect of the compensatory damages alone and did not see

8

the conduct as a repeat issue. When analyzing subsection (b)(6), the district court considered the fact that Michelle's income as near poverty level at the time of the thefts.

In accordance with subsection K.S.A. 60-3702(b)(5), the district court considered Michelle's acknowledgement of her actions and negotiations to reimburse Timothy. It considered her attitude as somewhat contrite, except for her attempt to trade off her obligation to repay Timothy with his obligations to pay for their daughter's medical expenses. The court noted that support intended for children is not to be used as an excuse not to pay undisputed bills. The court noted that Michelle would have properly addressed those disputes with a motion to enforce the divorce decree. It found Michelle was recalcitrant in fully paying Timothy.

The district court bypassed analysis under K.S.A. 60-3702(b)(4), the duration of the misconduct and its intentional concealment. The court found that subsection (b)(3) did not apply because there was no indication that Michelle profited from her theft as all money taken had been used to pay living expenses.

The district court analyzed subsections K.S.A. 60-3702(b)(1) and (b)(2) together. The court found Michelle's conduct had not seriously harmed Timothy, although he was not wealthy and was trying to keep up with his own requirements and needs at the time. It recognized he had suffered financial harm but not as bad as having to hire an attorney and take the matter to court. The court noted Michelle knew her conduct was wrong but stumbled with accountability to the point that she finally tried to stop all payments. In doing so, she was aware that she still owed Timothy. The court found that she did not have a good excuse for not paying Timothy and it was a willful decision.

The district court found that denying all requested punitive damages would deprive Timothy of the full value of what he was entitled to receive. The court

9

determined Timothy was entitled to $13,202.72 in punitive damages but declined to award him the additional $10,000 because "that would be piling it on."

With regard to the prejudgment interest, Michelle argued that she took the money from checking accounts that was just sitting in the accounts, not drawing any interest. She argued that adding prejudgment interest would be piling it on. She conceded the amount was ascertainable as of the date of discovery had Timothy conducted an accounting. Timothy argued that because the amount was ascertainable, he was entitled to prejudgment interest under K.S.A. 16-201 and asked the court to award him the previous judgment plus interest, a total of $25,078.81.

The district court held that the sums were ascertainable. It considered Michelle's argument that the money was just sitting in a bank account as negating the fact that K.S.A. 16-201 was specifically designed to assume that the loss of the value of money is worth something. The court found it was required to award prejudgment interest. It awarded prejudgment interest, amending the award to $25,078.81 and punitive damages for the amount of Timothy's attorney fees.

*Amount of Judgment*

Michelle contends the district court erred by entering a judgment for $19,281.95. She claims the court merely awarded the amount in the pretrial order although substantial competent evidence did not support the award. She asserts it was uncontroverted that she paid $7,300 back to Timothy and the district court failed to consider all payments. According to Michelle, the court should have awarded $15,838.63. Michelle does not challenge the court's conclusion of law by awarding the judgment.

We review the district court's factual findings under the substantial competent evidence standard. Substantial competent evidence is relevant evidence with substance,

10

which provides a substantial basis of fact from which the issues can reasonably be determined. *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 73, 350 P.3d 1071 (2015).

Michelle did not challenge that she took $19,212.53 from Timothy's business account, $2,626.10 from his personal account, and $1,300 in checks she wrote to herself, totaling $23,138.63. Michelle has only challenged that the district court did not subtract the proper amount of payments. She claims uncontroverted evidence showed she had paid Timothy $7,300. She cited to her testimony that she had paid approximately $7,000 and Timothy's closing arguments that the demonstrative exhibit accounted for about $7,300 repaid. In closing, Timothy told the district court, "I included every payment, including one that [the Christmans] said they made but we couldn't verify, but I went to their list and gave them credit for all of them based on the date that they said they were paid." Although Timothy estimated $7,300, he referred the court to the exhibit for the exact amount.

However, the evidence does not support Michelle's claim that she paid $7,300. Plaintiff's Exhibit 5 shows $6,577.05 in payments made toward reimbursing Timothy. She claims Timothy conceded that she paid $7,300 and included such amount in the demonstrative exhibit; Timothy's interest calculation only shows she repaid $6,127.05. Timothy's interest calculation did not include the second payment listed on the Michelle's ledger, a $450 payment. Removing all interest from Timothy's calculations, the original debt less the payments made should have totaled $17,011.58.

Although it appears the substantial competent evidence supports a judgment of $17,011.58, it is unclear how Timothy came up with $19,281.95 as the amount owed. That amount was determined at the pretrial conference. Michelle has not provided the transcript of that hearing in the appellate record. The pretrial order shows Timothy's claim is that she had taken and failed to repay $19,281.95, but there is no indication as to

11

how that amount was determined. Ultimately, the original judgment amount does not matter because the amended amount, which includes prejudgment interest, is based on the same calculations. Michelle did not contest Timothy's calculations for prejudgment interest, she only contested the application of interest to her debt. Ultimately, even with an incorrect initial judgment, the accuracy of the prejudgment interest calculation is uncontested. Michelle admitted Timothy's demonstrative exhibit included all payments she had made.

Michelle contends the district court merely granted that amount determined at the pretrial conference but failed to provide the transcript from the pretrial conference to establish how that amount was determined. The burden is on the party making a claim to designate facts in the record to support that claim; without such a record, the claim of error fails. *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 644-45, 294 P.3d 287 (2013). Because the judgment amount was introduced at the pretrial conference, absent the record from that hearing, we cannot determine whether the substantial competent evidence supported that amount. However, even if no such evidence exists, the award of prejudgment interest, the accuracy of which Michelle has not challenged, would nullify any error in the original award as all calculations have been taken from Timothy's interest calculation.

*Prejudgment Interest*

Michelle contends the district court abused its discretion by awarding prejudgment interest. She claims that neither the amount of debt nor the date it was due were clear. She further asserts the court should have used her claim of offset as evidence that the net amount of her debt was unclear.

Awarding prejudgment interest is a matter of judicial discretion, subject to reversal only upon a showing of abuse of discretion. *Owen Lumber Co. v. Chartrand*, 283 Kan.

911, 925, 157 P.3d 1109 (2007). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) it is based on an error of law; or (3) it is based on an error of fact. *Wiles*, 302 Kan. at 74.

Michelle does not specify whether no reasonable person would have awarded prejudgment interest or the district court acted on an error of law or fact. She appears to be challenging the district court's legal conclusion that the debt was ascertainable.

Prejudgment interest is governed by K.S.A. 16-201, which states:

> "Creditors shall be allowed to receive at the rate of ten percent per annum, when no other rate of interest is agreed upon, for any money after it becomes due; for money lent or money due on settlement of account, from the day of liquidating the account and ascertaining the balance; for money received for the use of another and retained without the owner's knowledge of the receipt; for money due and withheld by an unreasonable and vexatious delay of payment or settlement of accounts; for all other money due and to become due for the forbearance of payment whereof an express promise to pay interest had been made; and for money due from corporations and individuals to their daily or monthly employees, from and after the end of each month, unless paid within fifteen days thereafter."

Generally, courts grant prejudgment interest for only liquidated claims. *Owen Lumber Co.*, 283 Kan. at 925. "A claim becomes liquidated when both the amount due and the date on which such amount is due is fixed and certain or when the same becomes definitely ascertainable by mathematical calculation." 283 Kan. at 925-26 (citing *Blair Const., Inc. v. McBeth*, 273 Kan. 679, 689, 44 P.3d 1244 [2002]).

Michelle first claims that the amount due was not clear. She argues Timothy owed her for child support and their daughter's medical bills, which made the amount she owed unascertainable. Michelle claims that the amounts Timothy owed should have reduced

the amounts she owed. Although she did not challenge that she had taken $23,138.63 from him, she argues that she only agreed to pay him $17,000, an amount he agreed to accept. However, the Kansas Supreme Court has determined that prejudgment interest is appropriate even when liquidated claims may be subject to setoff or other counterclaims. *Owen Lumber Co.*, 283 Kan. at 925. Liquidation does not hinge on the amount having been calculated, it requires that the amount could have been definitely ascertained by mathematical calculation. 283 Kan. at 925.

Here, Timothy did not calculate the amounts taken until after filing the original petition. However, Michelle agreed the amount taken was ascertainable as of November 2013 when Timothy discovered the thefts. Michelle's claims that the amount was subject to offset or should have been reduced for other reasons do not change the fact that Timothy could have ascertained the amount she took on the date he discovered her conversion.

Michelle then argues that the date the debt was due was not clear. Under K.S.A. 16-201, money subject to prejudgment interest generally attaches to money owed on agreement of repayment or settlement of account. However, "money received for the use of another and retained without the owner's knowledge of the receipt" is the only form of debt accumulated without authorization, and so no agreement or terms of repayment applies. The Kansas Supreme Court has held: "[R]ecovery of interest from the time of the conversion is the general rule of law. 'Under the rule permitting the recovery of interest, or the equivalent of interest, in an action for conversion, such recovery is generally permitted from the time of the conversion.' 18 Am. Jur. 2d, Conversion § 122, p. 234." *In re Conservatorship of Huerta*, 273 Kan. 97, 110-11, 41 P.3d 814 (2002). Therefore, although the due date may not have been clear, because this is a conversion case, interest was appropriate from the time of the conversion.

14

Because Michelle's claims that she owed a lesser amount did not make the amount taken unascertainable and interest is permitted from the time of conversion, the district court did not base its award of prejudgment interest on an error of law. The district court did not abuse its discretion.

*Statute of Limitations Defense?*

Michelle asserts the district court abused its discretion by not granting her leave to amend her pleadings to include the statute of limitations defense. She claims that contrary to the court's findings, she did not waive the affirmative defense, the court's decision determined the outcome of the case, and it was not in the interest of justice.

Under K.S.A. 2017 Supp. 60-215, the district court has broad discretionary power in determining whether to permit amendment to pleadings. *Johnson v. Board of Pratt County Comm'rs*, 259 Kan. 305, 327, 913 P.2d 119 (1996). Appellate courts review a district court's decision on a motion to amend pleadings under the abuse of discretion standard. *Thompson v. State*, 293 Kan. 704, 709, 270 P.3d 1089 (2011). An appellate court will only find reversible error if the amendment allowed or denied was so material as to affect the substantial rights of the adverse party. *Johnson*, 259 Kan. at 327.

The district court heard Michelle's motion requesting leave to amend and include the affirmative defense of statute of limitations on April 26, 2017. She proposed that if the court would grant her leave to assert the statute of limitations, she would request the court grant Timothy leave to amend his pleadings to include the alternate cause of action for breach of the oral contract. Michelle contended the parties entered into an oral contract for $17,000, which was still actionable because of the three-year statute of limitations. The court was going to allow her to amend her pleading; however, it decided it was not in the interest of justice after Timothy provided the procedural history of the case. The court noted that Michelle ignored discovery requests for information regarding

affirmative defenses and raised this issue long after discovery and pretrial had closed. The court found that because she waited until the "eve of trial" to ask for leave after failing to comply with or object to the order to compel, which prohibits an affirmative defense not provided for in discovery, justice did not require leave. The court denied the motion. See Kansas Supreme Court Rule 170 (2019 Kan. S. Ct. R. 222).

According to K.S.A. 2017 Supp. 60-215(a)(2), a party may amend its pleading only if the opposing party has provided written consent or upon the district court's grant of leave and courts should "freely give leave when justice so requires." Under K.S.A. 2017 Supp. 60-208(c)(1)(P), a party responding to a pleading must affirmatively assert the statute of limitations affirmative defense. "Affirmative defenses not included in a responsive pleading are waived." *Evergreen Recycle v. Indiana Lumbermens Mut. Ins. Co.*, 51 Kan. App. 2d 459, 478, 350 P.3d 1091 (2015) (citing *Turon State Bank v. Bozarth*, 235 Kan. 786, Syl. ¶ 1, 684 P.2d 410 [1984]). Michelle failed to assert the affirmative defense and so waived it.

The issue then is whether granting Michelle leave to amend her answer would have been in the interest of justice. We must consider whether the amendment would have affected Timothy's substantial rights. See *Johnson*, 259 Kan. at 327. Michelle claims the amendment would not have affected the merits of the case because Timothy could have then sought relief under a contracts claim. She argues the district court denied the motion to punish her rather than to protect Timothy's interests. She points out that petitioning the court for breach of contract would have precluded Timothy from receiving punitive damages, but she claims the results would have been just.

Granting leave to amend her pleadings would have substantially affected Timothy's rights. The "oral contract" that Michelle proposed the parties agreed to was for only $17,000, but the substantial competent evidence shows she stole $23,138.63, a $6,138.63 difference. Additionally, a contracts claim would have prevented an award of

16

punitive damages, which the district court granted for fees incurred for litigation of this case, $13,202.72. If the court had granted leave, Timothy would have only received $3,797.28 plus prejudgment interest after paying his attorney fees. Timothy would have lost nearly $20,000. Granting Michelle leave to assert a waived defense would have punished Timothy for trusting that the parties could have resolved the issue between themselves rather than going straight to court.

Michelle waived the statute of limitations defense by failing to assert it in her answer. The district court properly found that permitting her leave to amend her answer was against the interest of justice. The district court did not abuse its discretion.

*Punitive Damages in the Amount of Attorney Fees*

Michelle claims the district court erroneously awarded Timothy $13,202.72 as punitive damages, alleging the court acted arbitrarily and committed an error of law. She argues that Kansas courts do not treat attorney fees as punitive damages and awarding his attorney fees rewarded him for filing an unnecessary suit. Michelle notes that though courts may consider the cost of litigation in awarding punitive damages, no authority exists to authorize punitive damages to serve as an award of attorney fees.

We review a decision of whether to award punitive damages for an abuse of discretion. *McElhaney v. Thomas*, 307 Kan. 45, 57, 405 P.3d 1214 (2017). With a challenge to the amount of punitive damages, appellate courts first determine whether the district court properly applied the provisions of K.S.A. 60-3702 in setting the amount. If so, the amount will only be set aside upon a showing that the district court abused its discretion, in other words, the district court's action was arbitrary, capricious, or unreasonable. *Werdann v. Mel Hambelton Ford, Inc.*, 32 Kan. App. 2d 118, 130, 79 P.3d 1081 (2003).

17

Michelle does not challenge the district court decision to award punitive damages, she only challenges the amount awarded. Pursuant to K.S.A. 60-3702(a), the court determined it could award punitive damages and held a separate proceeding to determine the amount. It analyzed the case using the seven considerations provided in subsection (b) and found Michelle had taken the money deceitfully and fraudulently. K.S.A. 60-3702(b) through (c). The question here is whether the district court can award punitive damages equal to attorney fees even though Kansas courts treat punitive damages and attorney fees separately.

"The express purpose of punitive damages is and has been to punish the tortfeasor and to deter it and others from committing similar wrongs in the future." *Smith v. Printup*, 254 Kan. 315, 325, 866 P.2d 985 (1993). Alhough punitive damages are not compensatory damages, courts may consider the probable expenses of litigation, including attorney fees, in determining the amount of damages to deter future wrongful conduct. *Capitol Fed. Savings & Loan Ass'n v. Hohman*, 9 Kan. App. 2d 217, 221, 675 P.2d 384, *aff'd* 235 Kan. 815, 682 P.2d 1309 (1984); See *Brewer v. Home-Stake Production Co.*, 200 Kan. 96, 100, 434 P.2d 828 (1967).

It appears Michelle is correct in claiming there is no precedence in awarding punitive damages in the same amount as attorney fees exists. The closest to a dollar-for-dollar assessment of punitive damages to attorney fees is in *Werdann*, 32 Kan. App. 2d 118. The district court awarded Werdann the full amount of attorney fees though such fees were not available for some of her claims. In improperly granting the attorney fees, the district court rationalized that it would have otherwise increased the punitive damages award by any amount the attorney fees would have been reduced had the fees properly been segregated by claim. Although the *Werdann* court questioned the dollar-for-dollar approach, it recognized that when determining punitive damages the district court may consider probable litigation expenses, including attorney fees. The *Werdann* court held that the district court could properly consider unrecovered attorney fees as a factor for

determining punitive damages. The *Werdann* court reversed and remanded for a rehearing on attorney fees upon segregation of claims. The court permitted modification of punitive damages, even if the district court did so using the dollar-for-dollar approach, so long as the findings on the record supported it. 32 Kan. App. 2d at 133.

Here, in its K.S.A. 60-3702(b) analysis, the district court determined the compensatory damages would have had a significant deterrent effect and did not anticipate Michelle would commit such conversion again. The court noted that although the evidence showed she acknowledged her wrongdoing and agreed to repay Timothy, she was recalcitrant in paying him fully and tried to use his support obligations as a bargaining tool to reduce her debt. The court did not find that Michelle's conduct had seriously harmed Timothy but noted the financial harm, which was exacerbated by having to hire counsel to obtain relief. The court pointed out that it could consider the amount Timothy suffered and the amount it took to recover. The court awarded Timothy punitive damages to cover his $13,202.72 in litigation costs to "bring [Timothy] up to speed in terms of the costs that he had to outline in getting this case resolved." However, the court declined to award the additional $10,000 requested as it was not justified. The court encouraged the parties to move past the discord as they had a child in common.

At trial, the district court recognized that Timothy would have accepted only $17,000, but issues only arose because Michelle stopped payments and tried to force Timothy to pay beyond his obligations in the divorce decree. In determining punitive damages, the court acknowledged that the amount granted would make Timothy whole but focused on the fact that he incurred the litigation costs only because Michelle stumbled with accountability and stopped payments although she knew she owed Timothy. The record demonstrates the court awarded punitive damages as punishment for Michelle's failure to follow through with repayment while limiting the damages so the parties might resolve their conflicts for the sake of their daughter. Therefore, the court's determination was not arbitrary, capricious, or unreasonable.

Michelle further challenged the amount, claiming it was based on an error of law due to the absence of authority to grant punitive damages in the exact amount as attorney fees. While there does not seem to be precedence for such an award, it is not prohibited. Kansas courts permit the punitive damages award so long as the findings on the record support the amount. The court explained on the record that the amount was to punish Michelle for forcing Timothy to incur unnecessary legal fees but limited the amount to assist parties in mending their relationship. The district court did not determine the punitive damages based on an error of law.

Affirmed.